# STOUTENBURGH *v.* FRAZIER.

CRIMINAL LAW; SUSPICIOUS PERSON; CONSTITUTIONAL LAW; HABEAS CORPUS.

1. The provision of the act of Congress of July 8, 1898 (30 Stat. 723), declaring that all "suspicious persons" can be arrested and prosecuted as criminals, and upon conviction be fined and imprisoned, is unconstitutional and void, and the police court of this District is without jurisdiction to try, convict and sentence to imprisonment a person charged thereunder.
2. The fact that an inferior court has jurisdiction to hear and determine criminal prosecutions for a class of offenses enumerated in a statute, will not preclude an inquiry by a superior court in a proceeding by *habeas corpus* as to the constitutionality and validity of the statute so far as a particular offense named therein is concerned, and for which the petitioner was convicted and is held in custody; and if it appear in such a proceeding that the provision of the statute under which the petitioner was convicted is unconstitutional and void, the prisoner will be discharged upon the ground that the conviction was a nullity.

No. 946. Submitted February 6, 1900. Decided March 7, 1900.

HEARING on an appeal by the respondent, the Intendant of the Workhouse, from a judgment of the Supreme Court of the District of Columbia, in a *habeas corpus* proceeding, discharging the petitioner, who was held in custody under a conviction in the police court of being a suspicious person. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Andrew B. Duvall*, Attorney for the District, and *Mr. Clarence A. Brandenburg* and *Mr. A. Leftwich Sinclair*, Assistant Attorneys, for the appellant:

1. The police court had jurisdiction of the person of the appellee and of the offense with which he was charged, and had full power and authority to impose the sentence which

it did impose. The only questions open and proper for consideration upon *habeas corpus* are: Had the court whose action is assailed jurisdiction of the party and of the offense charged against him? And had it power to impose the sentence which it did impose? The writ of *habeas corpus* can not be converted into a writ of error, and no retrial of issues of fact can be had to review the proceedings of a legal trial. *In re Coy,* 127 U. S. 731; *Horner* v. *United States,* 143 U. S. 570; *Ex parte Lennon,* 166 U. S. 548; *Ex parte Ward,* 173 U. S. 452; *Ex parte Belt,* 159 U. S. 95. The only ground on which a court, without some special statute authorizing it, will give relief on *habeas corpus* to a prisoner under conviction and sentence of another court, is the want of jurisdiction in such court over the person or the cause, or some other matter rendering its proceedings void. *Ex parte Frederich,* 149 U. S. 70; *Wight* v. *Nicholson,* 134 U. S. 136; *Davis* v. *Beason,* 133 U. S. 333; *Cortes* v. *Jacobus,* 136 U. S. 330; *In re Savin,* 131 U. S. 267; *In re Schneider,* 148 U. S. 162; *In re Harding,* 120 U. S. 782; *Ex parte Wilson,* 114 U. S. 417; *Ex parte Bigelow,* 113 U. S. 328; *United States* v. *Pridgeon,* 153 U. S. 48. The object of a writ of *habeas corpus* is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the Government is shown, he is not to be discharged for defects in the original arrest or commitment. *Ekie* v. *United States,* 142 U. S. 651; *In re Glenn,* 54 Md. 572; *People* v. *Lipscomb,* 60 N. Y. 559; *Fleming* v. *Clark,* 12 Allen, 191; *Nauer* v. *Thomas,* 13 Allen, 572; *State* v. *Towle,* 42 N. H. 541; *State* v. *Shattuck,* 45 N. H. 211; *Darrah* v. *Westerlage,* 44 Tex. 388; *Ex parte Schwartz,* 2 Tex. App. 74; *Ex parte Oliver,* 3 Tex. App. 345; *Griffin* v. *State,* 5 Tex. App. 457; *In re Eaton,* 27 Mich. 1; *Crandall's Petition,* 34 Wis. 177; *Williamson's Case,* 26 Penna. St. 9; *Emanuel* v. *State,* 36 Miss. 627; *In re Truman,* 44 Mo. 181; *Ex parte Rollins,* 80 Va. 314; *In re Dougherty,* 27 Vt. 325; *Ex parte Simmons,* 62 Ala. 416.

2. Congress, beyond doubt, had the power to create the

offense with which the defendant was charged in the police court, and it was not necessary for it to incorporate in the act a definition of the term "suspicious persons." 4 Bl. Com. 252. Statutes authorizing *summary convictions* are constitutional. 9 Am. & Eng. Encyc. L., 213.

*Mr. Perri W. Frisby, Mr. W. Calvin Chase* and *Mr. Thomas L. Jones* for the appellee:

1. If no judicial certainty can be settled upon as to the meaning of a statute, the court is not at liberty to supply or make one. *Drake* v. *Drake,* 4 Dev. 110 ; *State* v. *Perkins,* 91 N. C. 550. Statutes must always be construed to have a reasonable effect agreeable to the intention of the legislature, especially if the language be obscure, dubious. *Richard* v. *Doggett,* 4 Mass. 537; *Gore* v. *Brazier,* 3 Mass. 539. Criminal statutes should be construed so as to include what is fairly and reasonably within the scope of the language, but not to include what is not within the language merely because it partakes of similar mischievous quality. *In re McDonough,* 49 Fed. Rep. 360; *People* v. *Reynolds,* 71 Mich. 343.

2. Where a prisoner is detained under a void sentence his release will be ordered on *habeas corpus. Ex parte Yarborough,* 110 U. S. 651 ; *Ex parte Bigelow,* 113 U. S. 328; *Ex parte Wilson,* 114 U. S. 417. The jurisdiction of the person and the subject matter are not alone conclusive; but the jurisdiction of the court to render the particular judgment is a subject of proper inquiry, and if this is lacking, the prisoner held under it may be released on *habeas corpus. Ex parte Lange,* 18 Wall. 163; *People v. Walters,* 18 Wall. 163; *People* v. *Lipscomb,* 60 N. Y. 559. The Supreme Court of the District, having appellate jurisdiction, had a right on *habeas corpus* to examine the proceedings of the police court, to see whether or not it had exceeded its authority. *Hamilton's Case,* 3 Dall. 17; *Buford's Case,* 3 Cr. 448 ; *Ex parte Metzger,* 5 How. 176; *Ex parte Wells,* 18 How. 307; *Ex parte Mulligan,* 4 Wall. 2 ; *Ex parte McCradle,* 6 Wall.

318, 506; *Ex parte Yeazer*, 8 Wall. 85. The police court, like all other courts, derives its power from the law governing the particular offense over which it has jurisdiction, and when in any given case it exceeds its jurisdiction, either by imposing a greater fine than the law permits or convicting the accused of an offense not provided by law its judgments are void and the prisoner is entitled to discharge. *Ex parte Bain*, 121 U. S. 1; *State* v. *Gray*, 37 N. J. 369; *In re Staff*, 63 Wis. 285; *Wales* v. *Whitney*, 114 U. S. 564; *Ex parte Shaw*, Ohio Stat. 81; *Ex parte Page*, 49 Mo. 291; *People* v. *Warder*, 100 N. Y. 20; *In re Snow*, 120 U. S. 274; *In re Dill*, 32 Kans. 668; *Carvey's Case*, 7 Col. 384; *People* v. *Risely*, 38 Hun, 280; *Ex parte Seibold*, 100 U. S. 371. The statute authorized a fine in the discretion of the court, and it must be tested by the same measure under the Constitution as if it were the required penalty. *Ex parte Wilson*, 114 U. S. 417; *Mackin* v. *United States*, 117 U. S. 348; *Parkinson* v. *United States*, 121 U. S. 281.

3. So long as an act rests in bare intention it is not punishable by our law. Broom's Leg. Max. 309; *Murray* v. *Land Co.*, 18 How. 272; *Kennard* v. *Morgan*, 92 U. S. 480. In subjecting a man to a fine or imprisonment for what others think of him, or because of his reputation, the statute deprives him of property, of liberty, without due process of law. 1 Bish. Crim. L. 1088; *Huntsman* v. *State*, 12 Tex. App. 619; *Greens* v. *Briggs*, 1 Curt. C. C. 311; *State* v. *Kartz*, 13 R. I. 328; *State* v. *Beswick*, Id. 211.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The appeal in this case is brought into this court from a judgment of one of the justices of the Supreme Court of this District, sitting in special term, rendered on *habeas corpus*, whereby the appellee was discharged from imprisonment, to which he had been committed in execution of a sentence of the police court of this District.

It appears that the appellee was arrested, charged with being *a suspicious person*, and was taken before the police court, and, upon information filed in that court, he was tried and convicted, and was sentenced to pay a fine of $40, and in default of payment thereof to stand committed to the workhouse for the period of four months. Upon that conviction and sentence, he applied for the writ of *habeas corpus*; and upon return thereto, and hearing by the judge, the prisoner was discharged; and the intendant of the workhouse of the District, acting in behalf of the District, has taken this appeal.

By the information upon which the appellee was tried and convicted, a copy of which is filed with the petition for the writ of *habeas corpus*, the appellee was charged in the police court, with being, on the 1st day of October, 1899, at and within the District of Columbia, and ever since that date, and still was, at the date of the filing of the information, *a suspicious person*, in and about the streets, avenues, alleys, roads and highways, to wit, Four-and-a-half street, south-west, contrary to and in violation of the act of Congress entitled "An act to amend an act for the preservation of the public peace and the protection of property in the District of Columbia," approved July 8, 1898.

By the return of the intendant of the workhouse to the writ of *habeas corpus*, it is stated, " that the petitioner, said George Frazier, was convicted in the police court of the District of Columbia on the 24th day of October, 1899, of the charge of being *a suspicious character*, contrary to and in violation of the act of Congress approved July 8, 1898, entitled 'an act to amend,'" etc.

By the amendatory act of Congress referred to, approved July 8, 1898, the section 8 of the act of Congress of July 29, 1892, was stricken out, and the following substituted in its place, viz :

"That all vagrants—all idle and disorderly persons—persons of evil life or evil fame—persons who have no visible

means of support—persons repeatedly drunk in or about any of the streets, alleys, roads, highways, or other public places within the District of Columbia—persons repeatedly loitering in or around tippling houses—*all suspicious persons*—all public prostitutes—and all persons who lead a lewd or lascivious life—shall, upon conviction thereof, be fined not to exceed forty dollars, or shall be required to enter into security for their good behavior for a period of six months."

The arrest and conviction of the appellee appear to have been upon mere suspicion, and he is only charged with being a *suspicious person*, without any relation whatever to crime committed in the past, or crime intended to be committed in the future. The suspicion of which he is the object is wholly undefined, and in no manner connected with any criminal act or conduct either of the past or that might occur in the future. By whom the suspicion is to be entertained does not appear,—whether it be by one policeman or by several, seems not to be regarded as material; or whether it be a suspicion entertained by one or more citizens is by no means certain. It may be conceded that the fair construction of the statute requires that the suspicion must be in reference to some of the species or kinds of vices enumerated in the particular section of the statute, containing the provision upon which the prosecution is founded; but then the question is, with reference to what particular vice or vices of those mentioned in the statute must the suspicion be taken to relate? General suspicion, without even reference to a propensity or intent to commit some particular crime or offense against the law or police of the Government, must be conceded to be wholly inoperative and without effect, as a definition of crime. Mere suspicion is no evidence of crime of any particular kind, and it forms no element in the constitution of crime. Suspicion may exist without even the knowledge of the party who is the object of the suspicion, as to the matter of which he is suspected. The

suspicion may be generated in the mind of one or more persons without even colorable foundation of truth for the suspicion; and yet the party, the object of the suspicion, may, under the statute upon which the prosecution against the appellee was founded, be seized and imprisoned, tried and convicted, merely because some persons or police officer may have concluded (whether upon reasonable ground or not) that he was a *suspicious person*. Of what suspected? and what degree of suspicion exists? must always be the first thought that occurs upon such a charge as that made in this case. But here the party is charged, in an abstract way, of being a suspicious person merely; there being no act or conduct of his mentioned in the statute, to which the suspicion could relate. How is he to meet such charge? Suspicion, as a conception of the mind, is well defined as the imagination of the existence of something upon little or no evidence; doubt; mistrust; and so the adjective term *suspicious*, descriptive of the quality or condition of a person, as well the party suspecting as the party suspected, is defined, as apt to imagine with little or no reason; distrustful; liable or open to suspicion; exciting suspicion; giving reasons or grounds to suspect or imagine ill.

In the return of the intendant of the workhouse to the writ of *habeas corpus*, it is stated, as we have seen, that the prisoner was convicted and sentenced upon a charge of being a *suspicious character*. This is not the same thing as a charge of being a *suspicious person*. The element of character is general reputation as to what the party is supposed to be. Character is in itself such reputation as is generally accredited to the party in the minds of others, for good or evil, based upon his general conduct and habits of life, in relation to those to whom he is best known.

A suspicious character, however, does not constitute crime, nor does it justify the Government in treating the party having such reputation as a criminal, without connecting him with some criminal act or conduct. But

assuming that the return of the intendant was amendable, so as to make it conform to the information, and conviction thereon, it would seem to be clear that the offense as described in the statute, and in the information, is not such as will justify seizure and imprisonment of the party accused.      Under the Constitution of the United States, Articles IV and VIII of the Amendments, every person is intended to be secure in his person against unreasonable searches and seizures, and against cruel and unusual punishments; and it would clearly be a cruel and unnatural punishment to impose fine and imprisonment upon a party, because he might happen to be regarded by some persons as a *suspicious person,* without anything more.

In the legislation of England, in regard to the police of that kingdom, we find a great variety of regulations prescribed from time to time, dating back to the earlier reigns and all those in succession, down to modern times, to meet the requirements of the then existing states of society.      But much of that legislation has become obsolete, and, from its severe restrictions upon the liberties of the people, and the cruel and unnatural punishments inflicted, it has long since ceased to be applicable to modern society, and could not at this day be tolerated.      The history of that legislation is clearly stated by Mr. Justice Stephen in the third volume of his history of the Criminal Law of England, Ch. 32, pp. 263–274, and in 2 Broom & Had. Com. 467.

The statutes now in force in England, for the arrest and punishment of persons charged with *idleness, disorderly conduct and vagrancy,* etc., are 5 Geo. IV, Ch. 83, passed in 1824, and the amendatory acts of 1 and 2 Vict., Ch. 38; 31 and 32 Vict., Ch. 52; and 32 and 33 Vict., Ch. 99.      The Stat. of 5 Geo. IV, Ch. 83, was a revision of pre-existing statutes upon the subject, and that statute would seem to have furnished a general outline for legislation of the same class in this country.      By the fourth section of that statute, among other provisions, it is enacted, "that persons found in or

upon any dwelling house, warehouse, outhouse, etc., inclosed yard, garden, etc., for any unlawful purpose—*suspected persons or reputed thieves*, frequenting any river, canal, or navigable stream, dock or basin, or any quay, wharf, or warehouse near thereto, or any street, etc., leading thereto, or any place of public resort, or avenue leading thereto, or any place adjacent, *with intent to commit felony*—and persons apprehended as idle and disorderly persons, resisting officers in their apprehension, and being subsequently convicted of the offense charged,—shall be deemed *rogues and vagabonds*, and may be punished by a single justice, on the oath of one witness, with imprisonment in the house of correction, with hard labor, for any time not exceeding three calendar months."

This statute of George IV, as will be observed, does what our act of Congress fails to do—it requires the suspicion imputed to the party charged to have relation to or connection with certain acts and conduct of the party, and intention to commit crime. Without such relation or connection the party could not be charged and convicted as being a *rogue and vagabond*. But that statute, with the definitions and limitations to which we have referred, encountered severe opposition and criticism at the time, because it gave arbitrary, dangerous and undefined powers to a single justice, and by the indiscreet and malevolent exercise of which gave rise to the most vexatious imprisonment and subsequent litigation. It was found, says Mr. Chitty (1 Chitty, General Prac. 623), "that, under that act, the mere *suspicion of a propensity* to commit a trifling offense was punishable, by a single magistrate, with three calendar months' imprisonment, without the power of obtaining release upon finding the most satisfactory sureties for his good behavior." The dangerous and arbitrary provisions of that statute have, however, been modified by subsequent statutes upon the subject. But our act of Congress of July 8, 1898, being more arbitrary than the English statute of George IV, subjects a party

to seizure and conviction, to be followed by pecuniary fine or imprisonment, upon being charged of being a suspicious person merely.

In support of the prosecution and conviction (the case arising as it does upon *habeas corpus,* and therefore collaterally), it is contended that there was no power or jurisdiction in the court below to discharge the prisoner from the operation of the judgment and sentence of the police court; that the judgment and sentence of that court are final, and that the discharge of the prisoner from imprisonment in the workhouse, to which he had been committed in execution of judgment, was unwarranted and without the authority of law. This contention is entirely correct upon the assumption that the police court had full power and jurisdiction to take cognizance of the case, and to try and convict the accused, and to enter the judgment and sentence against him that we find stated in the record. It is argued that because the police court has jurisdiction to hear and determine prosecutions for the *class* of offenses enumerated in the act of Congress, among which this alleged offense is described, that therefore the court had jurisdiction in this particular case against the prisoner to proceed to try and pass judgment against him; and that the finding and judgment of the court must be accepted, in this collateral proceeding on *habeas corpus,* as final and conclusive; as well upon the question of jurisdiction of the court as upon the question of the guilt of the party. But this proposition, as applied to this particular case, can not be accepted without material qualification. The judgment and sentence of the police court are assailed in this case upon the ground that the act of Congress, under which the prisoner was convicted and sentenced, is, in respect to the particular offense charged, unconstitutional, or is so indefinite as to this particular offense as to be void and without effect. If this position is well taken, it affects the foundation of the whole proceeding. For, as said by the Supreme Court in *Ex parte Siebold,* 100

U. S. 371, 376–7 : "An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and can not be a legal cause of imprisonment. It is true, if no writ of error lies, the judgment may be final, in the sense that there may be no means of reversing it. But personal liberty is of so great a moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on *habeas corpus* by a superior court or judge having authority to award the writ. We are satisfied that the present is one of the cases in which this court is authorized to take such jurisdiction. We think so, because, if the law is unconstitutional and void, the circuit court acquired no jurisdiction of the cause. Its authority to indict and try the prisoners arose solely upon this law."

And so in the case of *In re Coy*, 127 U. S. 731, the Supreme Court, by Mr. Justice Miller, said: "As the laws of Congress are only valid when they are within the constitutional power of that body, the validity of the statute under which a prisoner is held in custody may be inquired into under a writ of *habeas corpus* as affecting the jurisdiction of the court which ordered his imprisonment. And if there be want of power apparent on the face of the record of his condemnation, whether in the indictment or elsewhere, the court which has authority to issue the writ is bound to release him." And to the same effect is the case of *Hans Nielsen, petitioner*, 131 U. S. 176. Indeed, many other cases might be cited in which the same doctrine is fully maintained.

We are, of course, sensible of the fact that it is only in cases where legislative power has been clearly transcended in declaring that to be law which is not within legislative competency, that courts are justified in declaring any particular provision of an act of Congress void and without

effect; and especially so where the act relates to matters within the District of Columbia, over which Congress has full and exclusive legislative power. But there are certain fundamental rights of person and property, even in this District, that are beyond the power of Congress to disregard or violate. The rights secured to persons and property by the Fourth and Eighth Amendments to the Constitution are among such rights. The power of Congress to legislate for this District, in matters of police, is certainly very large, and necessarily so; but there are certain fundamental maxims of a free government that would seem to require that the rights of personal liberty and private property should be held sacred. At least, no court of justice in this country would be warranted in assuming that power to violate and disregard them lurked under any general grant of legislative authority, or ought to be implied from any general impressions that may be found in any of the articles of the Constitution. *Wilkinson* v. *Leland*, 2 Pet. 627, 657; *Terrett* v. *Taylor*, 9 Cranch, 43. It has been recently well said by the Supreme Court that "the legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers *is not final or conclusive*, but is subject to the supervision of the courts." *Lawton* v. *Steele*, 152 U. S. 133, 139. And if so in respect to the rights of private property, *a fortiori* should it be so in respect to the personal rights of the citizens.

From what we have said in the preceding part of this opinion, the necessary conclusion is, that the particular provision of the amendatory act of July 8, 1898, declaring that "all suspicious persons" could be arrested and prosecuted as criminals, and upon conviction be fined and imprisoned, is nugatory and without effect, and therefore the police court was without jurisdiction to try, convict and sentence to

imprisonment the appellee. Of course this decision has reference only to the particular provision of the act of Congress upon which the prosecution against the accused was based, and to none other.

It follows that the judgment of the court below must be affirmed; and it is so ordered.          *Judgment affirmed.*