# FIELDS *v.* DISTRICT OF COLUMBIA.

BILL OF EXCEPTIONS; PERSONS OF EVIL LIFE AND FAME.

1. The language of a bill of exceptions in a case tried in the police court without a jury, unfavorably criticized by this court, where the formula used in it was that the court was asked to instruct itself, as a matter of law, etc.; the proper language being that the court was requested to rule, etc.
2. Proof that the accused was, in the daytime, the driver of a grocery wagon, and played a piano at night for hire in a house of ill fame, was *held* not to support an information in the police court, based upon the act of Congress of July 8, 1898 (30 Stat. at L. 723, chap. 638), charging him with being a person of evil life and fame; and the judgment of conviction was reversed.

Submitted May 23, 1905. Decided June 13, 1905.

IN ERROR to the Police Court of the District of Columbia.

*Judgment reversed.*

The COURT in the opinion stated the facts as follows:

The appellant, Albert Fields, was arraigned in the police court of the District upon an information against him wherein he was charged with being "a vagrant, an idle and disorderly person, a person of evil life and fame, a person without visible means of support, a person repeatedly in and about the streets, avenues, alleys, roads, and highways, to wit, C street northwest," in alleged violation of the act of Congress of July 8, 1898 (30 Stat. at L. 723, chap. 638), entitled "An Act to Amend 'An Act for the Preservation of the Public Peace and Protection of Property in the District of Columbia,' Approved July 29,

1892" (27 Stat. at L. 322, chap. 320). The portion of the act alleged to have been violated is in the following terms: "That all vagrants, all idle and disorderly persons, persons of evil life or evil fame, persons who have no visible means of support, persons repeatedly drunk in or about any of the streets, avenues, alleys, roads, highways, or other public places within the District of Columbia, persons repeatedly loitering in or around tippling houses, all suspicious persons, all public prostitutes, and all persons who lead a lewd or lascivious course of life, shall, upon conviction thereof, be fined not to exceed $40, or shall be required to enter into security for their good behavior for a period of six months. Said security shall be in the nature of a recognizance to the District of Columbia, to be approved by the court, in a penalty not exceeding $500, conditioned that the offender shall not, for the space of six months, repeat the offense with which he or she is charged, and shall in other respects conduct themselves properly."

The defendant first demurred to the information, and the demurrer was overruled. He then moved to quash the information, and this motion also was overruled. The purpose of these two proceedings was to raise the question of the vagueness, and therefore invalidity, of the enactment. Next, the defendant pleaded that he was not guilty, and demanded a trial by jury, but the demand was refused. To all these rulings of the trial court exceptions were duly reserved.

Trial was then had. The testimony adduced on behalf of the prosecution was that of two policemen, who testified, in substance, that the defendant was known as a "professor;" that he made his living by playing the piano in houses of ill fame in that malodorous part of the city of Washington commonly known as "The Division;" that he played there only at night, and charged for his services $1.50 a night in addition to what he received by collections; that the prostitutes would sing and dance while he played, and that he and other piano players in that section were hired to play for the entertainment of the guests.

During the cross-examination of one of these witnesses the

counsel for the defendant inquired upon which of the charges contained in the information the defendant was being tried, and the counsel for the prosecution replied, "that which charged him with being a man of evil life," and that he abandoned all of the others.

At the close of this testimony motion was made on behalf of the defendant for his discharge on the ground that the testimony failed to disclose that he was guilty of any of the offenses charged against him. The motion was overruled and exception reserved.

Thereupon the father and brother of the defendant were called to testify on his behalf. Their testimony was, in substance, that the defendant was a married man, and lived with his wife in a house on Madison street; that he worked every day for a living as the driver of a grocery wagon and supported his family, and that he was a piano player. This seems to have been all the testimony that was introduced. Thereupon the motion for verdict and judgment on behalf of the defendant was renewed, and was again overruled, and the defendant was sentenced to pay a fine of $40, and in default of payment to stand committed to the workhouse for six months. Upon writ of error allowed to him he has brought his cause here for review.

We deem this a proper occasion in which to call attention to a certain absurdity of language, which is becoming more frequent in the construction of bills of exceptions in the police court, and which appears in the case now before us. It is in the formula that the court is asked to instruct itself, as matter of law, etc., in cases tried without jury. This is nonsense. The proper form is that the court is requested to rule, etc.

*Mr. Thomas L. Jones, Mr. Armond W. Scott,* and *Mr. Marion T. Clinkscales* for the plaintiff in error.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. A. Leftwich Sinclair,* Assistant, for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

There are seven assignments of error here, but there are only three questions of law raised by them: First, whether the stat-. ute is valid or void for uncertainty; second, whether the defendant was entitled to a trial by jury; third, whether there was testimony in the case sufficient in law to support the information. But we do not deem it necessary to consider either the first or the second question, for we are very clearly of opinion that there was no sufficient testimony in the case to charge the defendant with criminality or delinquency of any kind under the law.

By the concession of the counsel for the prosecution the information was restricted to the charge that the defendant was a man of evil life. It may perhaps be regarded as of no consequence here that the information charges both an evil life and evil fame, as though the combination of both things were necessary to constitute the offense in question, while the statute is in the alternative and seeks to reach either evil life or evil fame. That which is important is that there is no testimony whatever to sustain the charge either of one or of the other. It does not appear that the learned "professor," who seems to have combined the pursuit of the heavenly art of music with the more mundane and prosaic occupation of delivering provisions from a grocery wagon, ever acquired fame of any kind, neither good or evil, by his performances, such as Nero did who is said to have fiddled while Rome burned. And if he is designated as "a man of evil life" because nightly, for a consideration, he dispensed the harmony of sweet sounds to admiring bands of the gentle and refined nymphs of "The Division," as it is called, and the fastidious guests whom they were pleased to admit to a view of their Terpsichorean performances, it might well be argued that he deserves praise rather than blame for seeking to lead his auditors from Cypress to Parnassus, from the lascivious groves of Daphne to the purer fountains of Helicon. It is true that excessive playing of the piano has sometimes excited homicidal mania throughout a whole neighborhood; but we have no

complaint that our learned "professor" here gave cause for
any such feeling among the placid denizens of The Division, or
in any way disturbed the peace and quiet of the place.

Seriously, we do not understand how the proof of playing the
piano at night in a house of ill fame in The Division can con-
vict one, especially a person of the class to which the appellant
belongs, of being a man of evil life, any more than if he played
that instrument in the homes of aristocracy.   The act would be
the same in both cases; and the locality of the performance does
not in any manner qualify its character.   We do not understand
that the art of music is a crime in The Division and an accom-
plishment in Belgravia.   Why may we not hold the man who
furnishes groceries to these dens of Cyprianism to be a man of
evil life, if we are to hold as such the man who furnishes music
to them?  If the charge against this appellant had been that he
frequented houses of ill fame, it is possible that a case of mis-
demeanor could have been made out against him.   But the
charge is not of that kind; it is that of being a man of evil life,
whatever that means; and this charge may reach Belgravia as
well as The Division.   It cannot, in reason, be supported by
proof of playing the piano at night in the last-mentioned quarter
of the city.

We think the judgment appealed from should be reversed.
The cause will be remanded to the police court, with directions
to vacate the judgment, and to discharge the defendant.   And
it is so ordered.                                *Reversed.*