## CLARK v. DISTRICT OF COLUMBIA.
### No. 112.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 11, 1943.

Decided Nov. 26, 1943.

Reargued Nov. 4, 1943.

T. Emmett McKenzie, of Washington, D. C. (Denny Hughes, of Washington, D. C., on the brief), for appellant.

Vernon E. West, Principal Asst. Corp. Counsel, of Washington, D. C. (Richmond B. Keech, Corp. Counsel, and Milton D. Korman, Asst. Corp. Counsel, both of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

This is an appeal from a conviction on a charge of vagrancy under Code Section

22—3302.[1] This section declares that certain classes of persons shall be deemed vagrants. Among those classes are: "(1) Any person known to be a pickpocket, thief, burglar, confidence operator, or felon, either by his own confession or by his having been convicted in the District of Columbia or elsewhere of any one of such offenses or of any felony, and having no lawful employment and having no lawful means of support realized from a lawful occupation or source, and not giving a good account of himself when found loitering around in any park, highway, public building, or other public place, store, shop, or reservation, or at any public gathering or assembly."

The arresting officer, a detective sergeant, testified that while on duty at the Greyhound bus station in the early afternoon of Saturday, May 8, 1943, he observed appellant loitering around the station for about five minutes in a large crowd of people, that he saw appellant enter and mingle with the crowd, then come out of the crowd and leave the station, that appellant was arrested after leaving, that he recognized appellant as a "professional pickpocket", that he had arrested him some months previously at the Union Station, following which appellant was convicted of vagrancy and given a suspended sentence on condition that he leave town. There was received in evidence a copy of appellant's record from the Federal Bureau of Investigation which showed, among other things, that appellant had been convicted of burglary in California, grand larceny in Texas, and possession of narcotics for which he was sentenced to serve a term of four years at Fort Leavenworth, Kansas. The officer testified that he had shown this record to appellant and appellant admitted that it was his record, that appellant told the officer he came from New York to Washington by railroad that morning, that he was just "looking around" at the bus terminal, that he came down from New York "to look around" and was "working alone". Appellant had no transportation tickets of any kind with him at the time of arrest.

The officer was the only witness for the prosecution; there was no cross-examination, and appellant did not take the stand.

Appellant contends that his arrest, being without warrant, was illegal and void; that an officer without warrant cannot arrest a person conducting himself in a quiet, peaceable and orderly manner, citing Bolt v. United States, 55 App.D.C. 120, 2 F.2d 922.

Our statute, like other vagrancy statutes, is in the nature of a police regulation to prevent crime,[2] and was enacted for the enforcement of good order and public safety.[3] The present law was enacted because of the feeling that the old vagrancy law of the District was inadequate to meet the purposes for which it was designed.[4] The statute must be construed in view of the purpose for which it was enacted, namely, to prevent crime. It ought not to be used as a means of oppressing those unfortunate ones who, having previously been convicted of crime, are attempting to rehabilitate themselves. We agree with the Court of Appeals of New York, which, speaking of a statute somewhat akin to the vagrancy law, in People v. Pieri, 269 N.Y. 315, 199 N.E. 495, 499, said: "Persons who have been convicted of crime and served the sentence imposed are not thereafter barred from society or intercourse with other human beings; they are not outcasts, nor to be treated as such."

On the other hand, we also agree with the Supreme Judicial Court of Massachusetts which, in Commonwealth v. El-

---

[1] This law became effective December 17, 1941. Prior to its enactment Congress passed a very similar bill (H. R. 5448) which never became law because of Presidential veto of September 29, 1941. The veto was based largely upon objections to two sections of the Act dealing with those "who live in idleness" and those "leading an idle life", the objection being that those provisions were indefinite and uncertain in their meaning and application. The present law is identical with the prior bill except that the two sections objected to by the President were deleted.

[2] Morgan v. Commonwealth, 168 Va. 731, 191 S.E. 791, 111 A.L.R. 62; People v. Belcastro, 356 Ill. 144, 190 N.E. 301, 92 A.L.R. 1223.

[3] The House Report accompanying the bill stated: "The measure as drafted is directed primarily to persons who are potentially a menace to the community."

[4] See House Report. Practically every vagrancy case which reached the Court of Appeals under the old law resulted in a reversal of the conviction. See Stoutenburgh v. Frazier, 16 App.D.C. 229, 48 L.R.A. 220; Fields v. District of Columbia, 26 App.D.C. 70; Fleming v. District of Columbia, 34 App.D.C. 5; Lewis v. District of Columbia, 51 App.D.C. 221, 277 F. 620; Rose v. District of Columbia, 51 App.D.C. 222, 277 F. 621.

lis, 207 Mass. 572, 93 N.E. 823, 824, speaking of a vagrancy statute, said: "The statute makes certain conduct punishable, as producing in a man a condition and character that render him an objectionable member of society, whose acts and influence are detrimental to the community. To convict him under this section, it must be shown that he was found prowling around one of the public places mentioned in the statute, and that he was doing this while having no visible and lawful means of support. It must also be shown that he was a person known to be a pickpocket, thief or burglar. His prowling around a public place is active conduct for which he is directly responsible. So too in ordinary cases, in a less marked degree, is his having no visible or lawful means of support. These are matters of conduct and behavior. When they coexist in a person known to be a pickpocket, thief or burglar, they constitute an offense for which he well may be subjected to punishment."

█ When the arresting officer saw appellant loitering around the bus terminal, mingling with the crowd, and recognized 'him as a professional pickpocket, we think the officer was authorized to question him, and, upon his failure to give a good account of himself, to place him under arrest. If the officer must wait until a crime is actually committed, then the preventive purposes of the Act wholly fail.

█ Appellant also argues that the statements made by him to the officer while under arrest were inadmissible under the decision of the Supreme Court in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. ——. We do not understand the McNabb case to hold that all statements made while in custody of the police are inadmissible, but condemns only those statements obtained by the police through an unlawful detention. Appellant was arrested Saturday afternoon. The court was not then in session and did not open until Monday morning. Appellant was taken to court Monday morning. Surely, where an arrested person is taken to court at the first available time, it cannot be said that his detention was either unreasonable or illegal.[5]

█ Appellant next contends that his conviction was illegal in that it depended solely and entirely upon an uncorroborated confession, and cites Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120, as establishing the rule that there can be no conviction in a criminal case upon an uncorroborated confession. However, the "confession" here involved is not a confession of guilt of the crime charged. The statute prescribes a number of elements which must unite to complete the offense.

The prosecution must prove that defendant is a known "pickpocket * * * or felon" either by his own confession or by record of his conviction.[6] If he "confesses" or admits his calling, proof by record is unnecessary; but such confession is not an admission of guilt of being a vagrant and standing alone would not make out a case of guilt. The other elements of the offense must still be proved to justify a conviction.

In Ex parte Hayden, 12 Cal.App. 145, 106 P. 893, 894, involving a similar statute and a similar question, the court said: "The section referred to does not justify the conviction, or declare the offense to be established, by the confession of the party, but does declare that his admission of the truth of one of the elements entering into the offense, to wit, his calling, is sufficient to establish that element. * * * It is manifest that the word 'confession' as used in the section has reference to an admission or declaration as to the party's status as distinguished from a confession of his guilt of a particular crime. When presented for trial the subject-matter of the inquiry is as to his calling, his idle loitering, the absence of visible means of support. If the illegitimate character of his calling is established, either by proof of former conviction or by his own admission, that element is established."

Furthermore, the "confession" here is not of the same nature as the confession of guilt in the ordinary case. Appellant admitted that he had been convicted of various crimes in numerous states. His admission thus, unlike a confession of guilt of a

---

5 Carroll v. Parry, 48 App.D.C. 453; Bullock v. United States, 74 App.D.C. 220, 122 F.2d 213.

6 That proof of being a "known" pickpocket, etc., is limited to two methods—

confession or conviction—we assume was due to the Supreme Court's ruling in Lanzetta v. New Jersey, 306 U.S. 451, 59 S. Ct. 618, 621, 83 L.Ed. 888, that the expression "known to be a member" is ambiguous and doubtful.

714

charged crime, was subject to verification by court records in those jurisdictions where the convictions occurred. The result was, therefore, simply to substitute his admission for record of convictions.

Finally, appellant contends that there was no burden upon him to prove lawful employment or means of support until the Government had first proved the other elements of the offense. With his statement we agree for it is in accord with our ruling in Rogers v. District of Columbia, D.C.Mun.App., 31 A.2d 649, 652, where we said concerning this particular provision of the statute:[7] "We think there is no question of the constitutionality of our statute if it is construed so that no burden is cast upon a defendant to prove lawful means of support until the prosecution has first proved, or offered evidence tending to prove, the other elements of the offense."

Here we think the evidence offered was adequate to prove the other elements of the crime, and in the absence of any proof on behalf of appellant of lawful employment or means of support, the evidence justified the finding of guilt.

Affirmed.

---

[7] "In all prosecutions under paragraphs 1 or 3 of section 22—3302 the burden of proof shall be upon the defendant to show that he has lawful employment or has lawful means of support realized from a lawful occupation or source." Code 1940, 22—3303.