[L. A. No. 8084.  In Bank.—June 2, 1926.]

## OHIO ELECTRIC CAR COMPANY (a Corporation), Appellant, v. GIDEON LE SAGE, Respondent.

[1] DEBTOR AND CREDITOR—APPLICATION OF PAYMENTS—INVOLUNTARY PAYMENTS—SECTION 1479, CIVIL CODE.—Section 1479 of the Civil Code governs the application of payments made by a debtor or by a creditor, if the debtor fails to make such application, and where the application is made by neither, each having had the right so to do, as provided in the section, and where the interests of third parties have not intervened; but said section has no application to involuntary payments made by a judgment debtor to the judgment creditor.

[2] ID.—INTERESTS OF THIRD PARTIES—GUARANTORS.—Third persons such as guarantors, sureties, indorsers, and the like, secondarily liable on one of several debts, cannot control the application of a payment by either the debtor or the creditor, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons; and where neither party applies the payment, the court is not required to apply it so as to exonerate such third persons, although their rights will be considered.

[3] ID.—INVOLUNTARY PAYMENTS—APPLICATION—RULE.—No hard-and-fast rule can be laid down for the application of involuntary payments, which is applicable to all cases, for the reason that when the duty devolves upon the court to make the application, it must be made in such a manner, in view of all the circumstances of the particular case, as will best protect and maintain the rights of all the parties.

[4] ID.—PAYMENT UNDER COMPULSORY PROCESS.—Payments made pursuant to compulsory process, not being voluntary, neither the debtor, creditor, or guarantor has any right to direct the application of the proceeds, but such application must be made by the court in accordance with the equities of the parties under the particular facts of the case.

[5] ID. — GUARANTOR — RIGHT TO APPLICATION OF PAYMENTS. — One of two guarantors, liable under his contract to hold the one guaranteed harmless on account of default of debtors in payment of

1.  Application of involuntary payments, notes, 96 **Am. St. Rep.** 81; 23 **L. R. A.** 467. See, also, 21 **R. C. L.** 104.

2.  Control of application by third persons, note, 96 **Am. St. Rep.** 52, 74. See, also, 21 **R. C. L.** 108.

3.  See 20 **Cal. Jur.** 938.

4.  See 20 **Cal. Jur.** 936.

certain debts, but not other debts due the creditor, was entitled to have a payment made by his coguarantor credited on his obligation as of the date of the payment; but the creditor was entitled to have a payment made by the debtor credited on an item of the indebtedness the least secured and therefore not on the obligation of said guarantor.

[6] Id.—Application of Payment to Unsecured Obligation.—When obligations are of the same class, a ratable application of payments may be properly made, but where they are not the same, or where one obligation is secured better than another, the application may rightly be made on the obligation the security for which is most precarious.

---

(1) 30 Cyc., p. 1228, n. 51.   (2) 30 Cyc., p. 1251, n. 94.   (3) 30 Cyc., p. 1241, n. 35.   (4) 30 Cyc., p. 1241, n. 35.   (5) 30 Cyc., p. 1252, n. 96.   (6) 30 Cyc., p. 1247, n. 64.

APPEAL from a judgment of the Superior Court of Los Angeles County. Guy R. Crump, Judge, *pro tem.* Modified and affirmed.

The facts are stated in the opinion of the court.

Parker & Parker for Appellant.

Julius V. Patrosso and C. C. Mishler for Respondent.

SHENK J.—On January 12, 1915, the appellant entered into a written contract with E. D. and R. B. MacIntosh, doing business under the name of Washington Street Electric Garage Company, by which the Garage Company was granted the exclusive right to purchase appellant's automobiles for resale in the city of Los Angeles. The order on each car was to be accompanied by a cash payment of $250 and the balance was to be due and payable on shipment. At the time of the execution of the contract, and as a part of the same transaction, the respondent and one George E. F. Duffet entered into a contract of guaranty with the appellant. This agreement was indorsed on the principal contract and is as follows:

---

6. Application to unsecured obligations, notes, 38 Am. St. Rep. 104; 96 Am. St. Rep. 50; 12 L. R. A. 712. See, also, 20 Cal. Jur. 941; 21 R. C. L. 96.

"Whereas—We are interested in the Washington Street Electric Garage Co. and at our request the Ohio Electric Car Co. has consented to deliver certain automobiles to the said Washington Street Electric Garage Co. without payment therefor in cash, and that the said Ohio Electric Car Co. has further, at our request, entered into the foregoing contract with the Washington Street Electric Garage Co., we hereby guarantee to hold the Ohio Electric Car Co. whole and harmless from any and all loss or damage by reason of any transaction or transactions between it and the Washington Street Electric Garage Co.

"GEO. E. F. DUFFET.

"GIDEON LE SAGE."

Pursuant to said contract the appellant, on January 20, 1915, shipped to the Garage Company automobile No. 5041, at the price of $2,178.70, upon which the sum of $250 was paid, leaving an unpaid balance of $1,928.70. On July 14, 1915, appellant also shipped to the Garage Company automobile No. 5003 at the same price, upon which the sum of $250 was paid and the balance of $1,978.70 was unpaid. On February 22, 1916, the Garage Company purchased from the appellant sundry automobile parts and two used cars, for which it became indebted to the appellant as of that date in the sum of $1,144.66, and which was not paid. Thereafter the appellant commenced an action in the superior court in and for the county of Los Angeles against the MacIntoshes, said Duffet and Gideon Le Sage, the respondent herein, for the purpose of enforcing collection of all three of said items from the defendants named in said action. On March 30, 1917, appellant recovered a joint and several judgment against all of said defendants for the sum of $5,453.56, being the balance due, with interest, on all of said items, together with $36 costs. The respondent prosecuted an appeal from that judgment and obtained a reversal thereof on the ground that the complaint did not state facts sufficient to constitute a cause of action against him, in that said complaint charged him as a principal obligor, whereas his contract constituted him a conditional guarantor or a guarantor against loss only. (*Ohio Electric Car Co.* v. *Le Sage,* 182 Cal. 450 [188 Pac. 982].) Said reversal was ineffective as to the other defendants named in said action and said judgment became final as to them, including Duffet, whose contract of guaranty

was the same as Le Sage's, and who, had he appealed, would no doubt have obtained a reversal as to himself.

Thereafter the appellant commenced the present action against the respondent, as sole defendant. It alleged in its first cause of action the recovery of the judgment in the former action against the MacIntoshes and Duffet and that the respondent was indebted to the appellant in the amount thereof; in the second and fifth causes of action the unpaid balance of $1,978.70 on each of said new cars and in the third cause of action the amount due and unpaid on account of automobile parts and used cars in the sum of $1,144.66. The fourth cause of action alleged an account stated as to the item included in count three. In its prayer the appellant sought recovery from the respondent on all of said causes of action.

The answer denied all liability on the part of respondent and as affirmative defenses alleged the collection by the appellant on January 26, 1921, of the sum of $1,810.19 pursuant to execution process against the property of Duffet and the collection by the appellant from E. D. MacIntosh on August 8, 1921, of the further sum of $1,569.55 pursuant to a sale of her property under execution issued in the former action. The respondent prayed that credit be given to him on account of said collections in any judgment that might be entered against him. The court found that the appellant had obtained the judgment in the former action but that the respondent was not liable to the appellant on account of said judgment; that the respondent was indebted to the appellant in the sum of $1,928.70, being the unpaid balance due on car No. 5003, with interest at the rate of six per cent per annum from July 14, 1915; that the respondent was also indebted to the appellant in the further sum of $1,928.70 as the unpaid balance due on car No. 5041, with like interest from January 30, 1915. It also found that the respondent, under his contract of guaranty, was not bound to pay the item of $1,144.66 on account of automobile parts and used cars. It further found that the appellant had collected from Duffet by compulsory process the sum of $1,810.19 on January 26, 1921, and the sum of $1,569.55 by like process from E. D. MacIntosh on August 8, 1921. The court concluded that the respondent was indebted to the appellant in the sum of $3,109.19 and costs. Judgment was entered

accordingly and from that judgment the plaintiff appeals on the judgment-roll alone, claiming that the judgment in its favor should have been at least $4,402.50.

No computations are incorporated in the record or in the briefs of counsel, but from the facts found and the amount of the judgment it is apparent that the judgment was determined by ratably apportioning both collections between the amount for which the appellant obtained judgment in the previous action and the amount for which the court gave judgment herein. The appellant is insisting upon the application of said collections, or at least one of them, to its claims and demands not included within the respondent's contract of guaranty at the judgment rate of interest.

[1] The only question presented on this appeal is as to the propriety of the application of said payments by the trial court, and it involves rules governing the application of involuntary payments made by the judgment debtor to the judgment creditor, having in mind the rights of the judgment debtor's guarantor, whose contract of guaranty is security for some but not for all of the items included in the former judgment. We are satisfied that section 1479 of the Civil Code has no application to this situation. That section governs the application of payments voluntarily made by the debtor, or by the creditor if the debtor fail to make such application, and where the application is made by neither the debtor nor the creditor, each having had the right so to do as provided in the section, and where the interests of third parties have not intervened. As between the debtor and the creditor the general rule is stated with supporting authorities in 30 Cyc., at page 1228, as follows: "Neither the debtor nor the creditor has a right to make an application of an involuntary payment, and the rules governing the application of voluntary payments by the court where neither party has applied them do not govern involuntary payments. Usually the application by the court will be *pro rata,* but in some jurisdictions involuntary payments insufficient to pay all claims are applied by the court so as to pay the unsecured rather than the secured claims."

[2] When the interests of a third party, such as a guarantor have intervened, his rights under the particular circumstances of the case must be taken into consideration. The rule in such cases is also stated in 30 Cyc., at page 1251, as follows:

"Third persons, such as guarantors, sureties, indorsers, and the like, secondarily liable on one of the debts, cannot control the application of a payment by either the debtor or the creditor, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons. So where neither party applies the payment, the court is not required to apply it so as to exonerate such third persons, although their rights will be considered."

[3] An extended excursion into the authorities, in addition to those cited by counsel, has convinced us that it is impossible to find or to lay down any hard-and-fast rule applicable to all cases, for the reason that when the duty devolves upon the court to make the application of an involuntary payment, such application must be made in such a manner, in view of all the circumstances of the particular case, as will best protect and maintain the rights of all parties. "No specific rule can be laid down that will embrace all the cases that may arise for its application, inasmuch as the infinite variety of human transactions cannot be included within the limits of a formulated rule; and therefore courts must be governed by principles rather than by fixed rules." (*Murdock* v. *Clarke,* 88 Cal. 384, 391 [26 Pac. 601, 603].)

[4] The payments made by Duffet and E. D. MacIntosh were pursuant to compulsory process. They were therefore not voluntary, and in such case neither the debtor nor the creditor nor the guarantor had any right to direct the application of the proceeds, but such application must be made by the court in accordance with the equities of the parties under the particular facts of the case. (*Crisman* v. *Lanterman,* 149 Cal. 647 [117 Am. St. Rep. 167, 87 Pac. 89]; *Murdock* v. *Clarke, supra; Irvine & Muir Lumber Co.* v. *Holmes,* 26 Cal. App. 453 [147 Pac. 229]; 20 Cal. Jur. 937.) In determining the equities it would seem proper and necessary to look behind the form of the prior judgment, upon which the respondent was not bound, and to consider the nature and source of the obligations on which the payments should be applied and the relationship of the parties thereto to the parties to this action. In considering those factors it should first be remembered that the respondent was not finally a party to the former action and was not bound by the judgment entered therein on March 30, 1917. The rights and liabilities of the parties to this action

were, therefore, not defined nor established by that judgment. Those rights and liabilities were determined primarily by and under the contract between the appellant and the respondent apart from any consideration of the former judgment. Under that contract the respondent was bound to hold the appellant harmless on account of the default of the MacIntoshes in their nonpayment for the two new cars. Upon that default he was liable for the unpaid balance of the purchase price in each case with interest at the rate of six per cent per annum from the date of the shipment. According to the findings herein the combined unpaid balance was the sum of $3,857.40. Appellant was therefore entitled to recover that amount from the respondent, together with interest at six per cent per annum to date of judgment herein, less any credits equitably deductible. On January 26, 1921, the liability of the respondent to the appellant on account of both principal and interest was $5,190.78. When $1,810.19 was collected on that date from Duffet, the respondent's coguarantor, the respondent was entitled to have that payment credited as of that date upon his then contract obligation. It was to his interest that it should be so applied. It was a matter of indifference to the MacIntoshes how it was applied, for the reason that any application of it would reduce *pro tanto* their obligation to appellant. [5] It was of special interest to Duffet to have it so applied, because it reduced to that extent the amount of any contribution which the respondent might thereafter seek to exact from him. And the appellant is not in position to insist that it be otherwise applied, because it could not equitably obtain double payment of that sum from the coguarantors.

As to the collection of $1,569.55 on August 8, 1921, from E. D. MacIntosh, one of the principal obligors, a different situation is presented. On the date of that collection the indebtedness of the MacIntoshes to the appellant on account of the item for automobile parts, used cars, and costs in the former action with interest thereon amounted to more than the amount of said collection. It would seem that the appellant would have the right to insist that said collection be applied to the satisfaction of that item for the reason that it was the least secured, lacking, as it did, the security of the respondent's contract of guaranty.

[6]   When the obligations are of the same class it has been held that a ratable application may properly be made (*Star Mill & Lumber Co.* v. *Porter*, 4 Cal. App. 470 [88 Pac. 497]; 20 Cal. Jur. 941), but where the obligations are not the same, or where one obligation is secured better than another, the application may rightly be made on the obligation the security for which is the most precarious. (*California Nat. Bank* v. *Ginty*, 108 Cal. 153 [41 Pac. 38]; *Murdock* v. *Clarke, supra.*)   In the early case of *Field* v. *Holland*, 10 U. S. (6 Cranch) 7, 28 [3 L. Ed. 136, see, also, Rose's U. S. Notes], Chief Justice Marshall, in applying the rule where the power of application devolves upon the court, stated: "It being equitable, that the whole debt should be paid, it cannot be inequitable, to extinguish first those debts for which the security is the most precarious."

When the application of said credits is thus made in accordance with what appear to be the equities of the parties under the peculiar circumstances here presented, the result is that the respondent is not entitled to credit on account of the collection from E. D. MacIntosh; that the collection of $1,810.19 on January 26, 1921, from Duffet reduced the respondent's obligation to $3,380.59 as of the date of said collection.   That sum, with interest thereon at six per cent per annum, fixed the indebtedness of the respondent to the appellant at the date of the judgment herein, on January 24, 1924, at $3,987.97, or $878.78 more than was allowed by the trial court.   From this result it will be seen that the respondent is not charged with more than was his legal obligation and the appellant receives no more from the respondent than was from him justly due.

The contention of the respondent that the appellant was not diligent in pursuing his claims against the principal obligors is not supported by the record.   The court found, in effect, that the appellant had exercised reasonable diligence to satisfy its claims against the MacIntoshes prior to the commencement of the present action.   As this appeal is upon the judgment-roll alone the said finding must be deemed supported by the evidence and is not subject to attack on the ground that it is unsupported.

The judgment appealed from is therefore modified by increasing the amount of said judgment by the sum of $878.78, thus fixing the amount of the judgment to be entered in

favor of the appellant and against the respondent at the sum of $3,987.97 on the going down of the *remittitur*. As so modified the judgment is affirmed, the appellant to recover its costs of appeal.

Richards, J., Waste, C. J., Curtis, J., Seawell, J., and Lawlor, J., concurred.

Rehearing denied.