[Civ. No. 9951. Second Appellate District, Division Two.—April 22, 1935.]

BANK OF AMERICA NATIONAL TRUST AND SAV-INGS ASSOCIATION (a National Banking Association), Appellant, v. TOMASA S. KELSEY, Respondent.

Freston & Files, Ralph E. Lewis, Louis Ferrari and Edmund Nelson for Appellant.

Mott, Vallee & Grant and Kenneth E. Grant for Respondent.

WILLIS, J., *pro tem.* — This action was instituted to secure recovery of money from defendant upon a written guaranty executed by her on January 29, 1930, in favor of plaintiff's predecessor in interest, the pertinent parts of which are in the following language: "You will please give credit to Van R. Kelsey and permit him to become indebted to you on endorsements, overdrafts, acceptances or other liabilities in a sum in United States gold coin not exceeding the total amount of Ten Thousand Five Hundred and no/100 Dollars ($10,500.00) and as said Van R. Kelsey contemplates a course of future dealings with you, you will please continue said credit, or if it should be reduced or satisfied by payments, renew the same from time to time for said amount, or any less sum, or otherwise keep said credit permanently up to the limit aforesaid, or any less sum. And these presents shall be deemed to be, and shall constitute to you a continuing guaranty in reference to, and embrace the original credit hereby authorized and all future liabilities of said Van R. Kelsey to you under such original credit, and under any renewal or renewals thereof, and under any note, endorsement, acceptance, overdraft and/or liability and under such successive transactions with you as shall either continue said liabilities, or from time to time renew them, and this guaranty shall remain and be operative until all present or future credit and credits given by you as aforesaid, not exceeding said limited amount, shall be fully paid, and this guaranty shall remain in full force and effect until written notice of revocation shall have been actually received by you from the undersigned, . . . "

The last amended complaint upon which this action was tried contained two causes of action, the first for reformation of the guaranty agreement on the ground of mutual mistake, so as to cover and include indebtedness previously incurred and existing at the date of execution of the guaranty as well as indebtedness subsequently incurred by said Van R. Kelsey, and for enforcement thereof and recovery thereon of the unpaid balance of all such prior and subsequent indebtedness alleged to be the sum of $10,500, and for attorneys' fees as provided in such guaranty. The second cause of action was founded on the guaranty as written and sought recovery of the unpaid balance on all indebtedness

incurred subsequent to the execution of the guaranty, alleged to be the sum of $4,765, with certain interest thereon, and for attorneys' fees.

At the trial the court granted a nonsuit as to the first cause of action for failure of proof of mistake in the making of the guaranty agreement, and no error is claimed in respect to such action. In considering and deciding the second cause of action, the court adopted the construction of such guaranty agreement which limited the liability of the guarantor to indebtedness incurred subsequent to its execution. The court also found that in the making of certain payments on his indebtedness subsequent to the date of the guaranty by Van R. Kelsey "it was his intention" that said payments were to be applied to that portion of his indebtedness which had arisen and accrued subsequent to January 29, 1930, the date of such guaranty. In its conclusions the court also declared that these certain payments so found to have been made must be applied towards the payment of indebtedness which accrued and arose subsequent to the twenty-ninth day of January, 1930, for the reason that said Van R. Kelsey "intended" that said sums should be so applied. Under the construction so adopted and the facts as found the court ordered judgment in favor of plaintiff for the sum of $400 with certain interest as balance on indebtedness incurred on direct loans, evidenced by notes of Van R. Kelsey, made subsequent to January 29, 1930, and for the further sum of $365 with certain interest, as balance on indebtedness incurred on a loan to a third party, whose note the said Van R. Kelsey had indorsed and guaranteed subsequent to January 29, 1930, and for the sum of $250 as attorneys' fees.

From this judgment, plaintiff has brought to us this appeal and earnestly urges (1) that, even without reformation, the guaranty agreement as written ought to be interpreted to include and cover preexisting as well as subsequent obligations of Van R. Kelsey, and (2) that under the provisions of section 1479 of the Civil Code, correctly construed, certain payments made by Van R. Kelsey subsequent to January 29, 1930, should have been credited by the court on a preexisting indebtedness as first in order of precedence under such section, thus increasing the amount to which plaintiff was entitled to recover.

██ Upon consideration of the nature and the language of the guaranty as it was drafted and executed in the light of the rules governing interpretation of such instruments, we are satisfied that the interpretation placed thereon by the trial court was correct. ██ Contracts of guaranty are to be construed under the same rules employed in construing other contracts, and should receive a fair and liberal interpretation according to the true import of their language, and the liability of the guarantor should not be extended by implication beyond the express terms of the instrument in which the guaranty is contained. (*First Nat. Bank* v. *Spalding,* 177 Cal. 217 [170 Pac. 407].) ██ It is a rule of very general application that all guaranties are prospective and not retrospective in operation, unless the contrary appears by express words or by necessary implication. (Brandt on Suretyship and Guaranty, 3d ed., sec. 108; *National Bank of Commerce, etc.,* v. *Rockefeller,* 174 Fed. 22.) There is nothing in the language of the guaranty before us which discloses any purpose, either express or implied, to give it a retrospective operation. Its whole import is that of promise to guarantee and pay future indebtedness. There is not even a remote reference to any past or existing indebtedness therein. The words employed clearly look to the future and not to the past. An almost exact prototype of this instrument appears in the decision in the case of *London & S. F. Bank* v. *Parrott,* 125 Cal. 472 [58 Pac. 164, 73 Am. St. Rep. 64], wherein the facts reveal that it was drawn and executed at a time when the party whose obligations were to be guaranteed owed no existing debts. That instrument was couched in language to fit future debts. This instrument in the case at bar, being in substantially the same language, must logically be deemed to be of the same category, and to exclude from contemplation the existence of any preexisting debts as coming under the guaranty.

██ In its attack upon the trial court's decision in respect to allocation of credits of the two payments of $1600 and $5,000, hereinafter more fully considered, appellant first makes assault upon the finding of the court that "it was his intention" that said payments should be applied to indebtedness incurred subsequent to the guaranty when Van R. Kelsey made such payments. This finding and the cor-

responding conclusion are immaterial and cannot constitute basis of any right or create any duty in respect to application of payments by a debtor who is under several obligations to another. "Intention" is a state of mind and, until communicated or manifested, is known only to its possessor. There was in the evidence herein no evidence of the "intention" of Van R. Kelsey at the time he made the payments in question, as he died before this action was commenced and of course could not reveal his "intention" to the trial court. The essential and material factor in a case of this kind is the "intention or desire of the debtor manifested to the creditor". (Sec. 1479, Civ. Code.) No finding was made by the trial court on this factor other than as above stated, and it must be concluded as a matter of law that the fact as found by the court did not necessarily warrant and support its conclusion that the payments in question must be credited on subsequent obligations only. Such finding should, therefore, be considered as surplusage, and the corresponding conclusions be disregarded as unfounded. Upon examination of the evidence relating to the question of manifestation of intention on the part of the debtor, we find nothing therein which would support a finding that the debtor, Van R. Kelsey, manifested any intention or desire to the creditor, appellant herein, that such payments, or either of them, should be applied to the extinction of or reduction of any particular obligation. (See *Ray* v. *Borgfeldt*, 169 Cal. 253 [146 Pac. 679].) But the evidence does show that the creditor, appellant bank, made an application of such payments towards the extinction of a group of four particular obligations due at the time to the exclusion of two other separate obligations, without distinction, however, as between the four different obligations, the details of which transaction will be considered hereinafter.

■ It has been long ago declared by the Supreme Court that it may now be considered as the settled rule in this country, wherever the common law prevails, that when neither the debtor nor creditor makes any application of a payment on a debt, and there are different debts due from the debtor to the creditor, the law will make the application in such a manner, in view of all the circumstances of the case, as is most in accordance with justice and equity, and will best protect and maintain the rights of both parties;

but that no specific rule can be laid down that will embrace all the cases that may arise for its application, inasmuch as the infinite variety of human transactions cannot be included within the limits of a formulated rule, and, therefore, courts must be governed by principles rather than by fixed rules in making such application, unless a fixed rule embraces the transaction in question. (*Murdock* v. *Clarke*, 88 Cal. 384 [26 Pac. 601].) In this state the legislature has attempted to make rules for the guidance of courts in this respect by the provisions of section 1479 of the Civil Code, wherein it is provided that where a debtor, under several obligations to another, makes a payment to his creditor, which is equally applicable to two or more of such obligations, where neither the debtor manifests a desire or intention to the creditor that such payment should be applied on any particular obligation, nor the creditor makes any application of such payment to any particular debt due at the time, then under subdivision three of said section the payment must be applied to the extinction of obligations in the following order; and, if there be more than one obligation of a particular class, to the extinction of all of that class, ratably: (1) of interest due at the time of payment; (2) of principal due at that time; (3) of the obligations earliest in date of maturity; (4) of an obligation not secured by a lien or collateral undertaking; and (5) of an obligation secured by a lien or collateral undertaking.

A guaranty, such as is here involved, is a collateral undertaking in the nature of security for the obligations of the debtor, Van R. Kelsey, incurred subsequent thereto. (*Ohio Electric Car Co.* v. *Le Sage*, 198 Cal. 705 [247 Pac. 190].) Hence we have at once established at least two classes of obligations as defined by section 1479, for the evidence without question shows that at the date of each of the payments, the debtor was obligated for both pre-existing debts, unsecured by the guaranty and debts incurred subsequent thereto, and thus secured by the guaranty. As these obligations are all evidenced by promissory notes evidencing loans of money at different times and for different periods, it is quite clear that section 1479 of the Civil Code is applicable and must be recognized as controlling the court in the allocation of the two payments in question to the obligations of the debtor in the order prescribed by the

section as above stated, in accordance with their status at the time of such payment, instead of the common-law rule, which is applicable and controlling only when the code rule does not embrace the conditions of a given case, as announced in the case of *Murdock* v. *Clarke*, above cited. ■ And in this connection it should be stated that third persons, such as guarantors, sureties, indorsers and the like, secondarily liable on one or more of several debts cannot control the application of a payment by either the debtor or the creditor, and where neither party applies the payment to a specific debt the court is not required to apply it so as to exonerate such third persons. (30 Cyc., p. 1251; *Ohio Elec. Car Co.* v. *Le Sage, supra; S. W. Towle Lumber Co.* v. *Anderson,* 208 Cal. 371 [281 Pac. 500].)

With these rules to guide the court, we ascertain from the record the following undisputed facts: On September 12, 1930, Van R. Kelsey made a payment of $1600 to the appellant bank. ■ At that time the bank held a note of $4,000, then due and representing a preexisting indebtedness, and a note for $2,000, and two notes of $2,500 each, all due and representing subsequent indebtedness. These notes amounted in all to the sum of $11,000. Against this total, without distinction between the two classes of indebtedness, there was credited the payment of $1600 on September 12, 1930, and the bank required and the debtor executed a new note for the balance of $9,400, the total residue of the two kinds of debts thus becoming merged in one instrument. The evidence reveals without dispute that this note was a renewal note only and was not given in payment of the prior notes, and did not therefore discharge any of the separate debts which it evidenced, and therefore did not change the character of the balance of the preexisting debt to that of a subsequent debt secured by the guaranty. (*Bridge* v. *Connecticut Mut. Life Ins. Co.,* 167 Cal. 774 [141 Pac. 375].) ■ There being no item of interest involved at the time of this payment, we are led to the second class mentioned in subdivision three of section 1479, which embraces "principal due at that time", and under its terms we must apply the payment of $1600 to the $4,000 note as being first in order of the four notes and the only one of its class of unsecured notes. This would result in reducing the $4,000 preexisting debt to $2,400, which, with the total of the other

three notes secured by the guaranty, was carried into and made up the amount of the $9,400 note above mentioned.

On May 5, 1931, a further payment of $5,000 was made by the debtor and applied by the creditor on the $9,400 note. At that time the $9,400 note was due, and under the rule there must be allocated from the $5,000 payment, first the sum of $2,400 to extinguish the balance of the pre-existing unsecured debt, and the balance of $2,600 to the partial extinction of the residue of $7,000 which was in the secured class. This would leave the sum of $4,400 unpaid on the debts secured by the guaranty, with which we have been dealing. In addition there was a separate obligation of the debtor secured by the guaranty in the sum of $365 as separately found by the court. This item has been carried separately by the parties in their briefs as well as by the trial court in its findings. There is no controversy over it nor the correctness of the court's inclusion of that amount as an additional obligation of the guarantor. The total of the guaranteed obligations is, therefore, the sum of $4,765.

It should be stated that during all these transactions there was in existence another note of the debtor evidencing a preexisting debt in the sum of $6,500, which was carried on by renewal notes and still existed at the time each of the payments were made. Appellant concedes that both parties in their dealings with each other in respect to application of the payments, excluded from consideration this $6,500 note, and that the only debts considered at the time of the first payment were those represented by the four notes above mentioned, and which were merged into one note of $9,400 upon application thereon of the payment of $1600. We note also from the bank loan liability ledger, received in evidence, and as found by the trial court that the last payment of $5,000 was in fact credited on the $9,400 note, and a new or renewal note of $4,400 representing the balance thereof was executed by the debtor on July 7, 1931. It is proper, therefore, to exclude the $6,500 note from benefit of any credit by reason of either of these payments.

It appears clear to us that a new trial of this action is not required by the interests of justice, but that upon the undisputed evidence findings of facts may be made by this court contrary and in addition to those made by the trial

court, and a judgment given as required under such findings. Finding numbered IX of the trial court is therefore stricken and in lieu thereof this court makes the following finding: "That at the time the said Van R. Kelsey paid the said sum of $1600.00 as found in paragraph VII of these findings, he did not manifest any desire or intention to said Bank of America to have the said sum applied on any particular indebtedness other than that evidenced by the four notes described and found in paragraph VII of these findings, nor as to any particular indebtedness evidenced by said four notes; that said Bank of America applied said sum to the whole of said indebtedness of $11,000.00 without distinction as to any one or more of said four notes evidencing the same, and required of and accepted from said Van R. Kelsey the execution and delivery of a renewal note for the balance thereof in the sum of $9400.00, as found in paragraph VII hereof; that at the time said Van R. Kelsey paid the said sum of $5000.00, as found in paragraph VIII of these findings, he did not manifest any desire or intention to said Bank of America to have the said sum applied on any particular indebtedness other than the indebtedness then evidenced by the said $9400.00 promissory note described in paragraphs VII and VIII of these findings, nor as to any particular indebtedness evidenced by said note of $9400.00; that said Bank of America applied said sum to the partial extinction of said $9400.00 note without distinction as to any one or more of the four items of indebtedness evidenced thereby; that by the application of said payment of $1600.00 to said indebtedness of $11,000.00, as found herein, there became and was credited on said $4000.00 note, described in paragraph VII of these findings, the whole of said sum of $1600.00, leaving the sum of $2400.00 unpaid thereon; that by the application of said payment of $5000.00, as found herein, there became and was credited on said $9400.00 note, the sum of $2400.00 to the extinction of said $4000.00 note, and the sum of $2600.00 being the balance of said payment, to the partial extinction of said $2000.00 note and of each of said two $2500.00 notes, aggregating $7000.00, as described in paragraph VII of the findings herein, leaving a balance of $4400.00 unpaid on said last mentioned notes."

Upon the findings as thus changed and added to, and in accordance with the views hereinabove expressed, we con-

clude that the plaintiff, appellant herein, is entitled to a judgment against defendant, respondent herein, in the sum of $4,400 with interest thereon at the rate of 7 per cent per annum from July 7, 1931, and in the further sum of $365 with interest thereon at the rate of 7 per cent per annum from May 4, 1931, together with the further and additional sum of $250 as attorneys' fees. Let judgment be entered herein as above stated, and it is further ordered that the judgment appealed from herein, as so modified be, and the same is hereby affirmed as modified, appellant to recover its costs on appeal.

Stephens, P. J., and Crail, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 22, 1935, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1935.