OPINION OF THE COURT
Per Curiam.
Judgment of conviction rendered April 25, 1985 is reversed, on the law, and the defendant’s motion to dismiss the loitering charge is granted and the matter is remitted to the Criminal *23 Court for further proceedings upon the charge of possession of a controlled substance in the seventh degree (Penal Law § 220.03).
Defendant was arrested on charges, as set forth in the accusatory instrument, that he was present at the Port Authority bus terminal and unable to give a satisfactory explanation for his presence; and that, upon his arrest for so loitering, an envelope containing cocaine and a glass pipe was recovered from him. At his arraignment, defendant moved to dismiss the loitering charge as unconstitutional. After the court denied the motion, defendant pleaded guilty to loitering (Penal Law § 240.35 [7]) in satisfaction of both charges.
On appeal, defendant argues that the loitering statute is unconstitutional.[1] Penal Law § 240.35 (7) provides that a person is guilty of loitering when he "[l]oiters or remains in any transportation facility, or is found sleeping therein, and is unable to give a satisfactory explanation of his presence.” While the Court of Appeals in 1953 upheld a similarly worded statute[2] as not void for indefiniteness (People v Bell, 306 NY 110), since that time, a large body of law has developed as concerns loitering statutes vis-á-vis Fourteenth Amendment due process requirements. In fact, United States Supreme Court precedents have consistently established that in order to withstand constitutional scrutiny, a statute must give a person of ordinary intelligence fair notice that certain conduct is forbidden (Papachristou v City of Jacksonville, 405 US 156, 162; United States v Harriss, 347 US 612, 617) and must contain explicit standards for law enforcement officials so that the statute is not enforced in an arbitrary and discriminatory manner (Grayned v City of Rockford, 408 US 104, 108-109). In accordance with these standards, almost in recognition of the inherent lack of notice endemic to loitering statutes, the Court of Appeals has found the vagueness of a proscription of loitering alone to be overcome by either the "delineation of specific conduct, in addition to the loitering, which the arresting officer must observe” (see, e.g., People v Smith, 44 NY2d *24 613, 620, where the court sustained a statute prohibiting loitering for the purpose of prostitution) or the designation that loitering is prohibited in a specific place of restricted public access (see, e.g., People v Johnson, 6 NY2d 549, 552, where the court sustained the constitutionality of a statute prohibiting loitering on school grounds). Thus, in the former category (requiring the observance of specifically proscribed conduct in addition to loitering), the court, while upholding a statute prohibiting loitering for the purpose of prostitution (People v Smith, supra), has invalidated á statute finding one guilty of loitering when he loiters "under circumstances which justify suspicion that he may be engaged or about to engage in crime” (Penal Law § 240.35 [former (6)]) on the basis that the statute failed to delineate any identifiable act proscribed (People v Berck, 32 NY2d 567) and has invalidated a statute prohibiting loitering for the purpose of deviate sexual behavior on the ground that the object of the statute was to punish conduct anticipatory to the act of consensual sodomy, the prohibition of which had previously been invalidated (People v Uplinger, 58 NY2d 936). And, in the latter category (upholding mere loitering proscriptions only in places of restricted public access), the court has invalidated a statute prohibiting loitering " 'about any street or street corner in the City of Dunkirk’ ” (People v Diaz, 4 NY2d 469, 470), but has sustained statutes prohibiting loitering in schools (People u Johnson, supra) or waterfront facilities (People v Merolla, 9 NY2d 62, cert denied 365 US 872).
While it is true that People v Bell (supra) (where the Court of Appeals upheld a statute similar to the subject ordinance) has been cited with approval via string citations in cases which postdated the United States Supreme Court’s seminal Papachristou decision (see, People v Smith, supra, at 620; People v Berck, supra, at 570), it is clear that the reference to Bell has been made to support the principle that simple loitering statutes will be sustained in places of restricted public access, without reexamining the specific application at issue, i.e., whether a given railroad station or transportation facility is a place of such restricted public access as to render constitutionally permissible the enforcement on those premises of the statute in question. In considering the problem, it cannot be ignored that today a reference to a "station” or to a "transportation facility” will often have a more expansive meaning than might have been the case in 1953, when Bell was decided. Today many transportation facilities are multidi *25 mensional, multipurpose facilities. Indeed, regarding the Port Authority bus terminal, the facility here at issue, the Second Circuit has observed: "[T]he character and function of the Terminal, makes clear that it is a thoroughfare used by thousands of people each day. It is one of the busiest passageways in the country, with persons hurrying to and from subways, buses, shops, theaters and other streets. In design and physical appearance, the main concourse resembles a street * * * The terminal, with its many adjuncts * * * becomes indoors, with its 'streets’ in effect set atop one another, and vehicles operating under, above, and to the side, not unlike some futuristic design for urban living” (Wolin v Port of N. Y. Auth., 392 F2d 83, 89). Thus, one lower court (Rothwax, J.) has observed — in a comprehensive and well-reasaned opinion holding the instant statute unconstitutional— that the "Poit Authority Bus Terminal is more akin to the streets of Diaz than either the school in Johnson or the waterfront pier in Merolla” (People v Velazquez, 77 Misc 2d 749, 759). The point is well taken.[3] Even if some transportation facilities are deemed places of "restricted public access”, the change in character of many of those facilities over the past 30 years requires at least a sliding scale scrutiny to examine the public character thereof. In the instant case, for the reasons already mentioned, the public nature of the Port Authority bus terminal is overwhelming, thus rendering a statute prohibiting mere "loitering” therein unconstitutionally vague as failing to meet the sufficient notice test (accord, People v Velazquez, supra).[4]
*26 In addition to the foregoing, we view Penal Law § 240.35 (7) to be fatally flawed by its "satisfactory explanation” provision. While, again, this provision was upheld in People v Bell (supra), in People v Berck (supra), addressing the constitutionality of a loitering statute providing that a person is guilty of loitering when he loiters "under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes” (Penal Law § 240.35 [former (6)]), the court specifically held that such "satisfactory account” provisions, in utter contravention of Papachristou (supra), place "unfettered discretion in the hands of police and thereby encourage * * * arbitrary and discriminatory enforcement” (supra, at 571; see also, Kolender v Lawson, 461 US 352, 360, n 9, where, in invalidating a statute requiring "loiterers” to provide a "credible and reliable” identification and to account for their presence when requested by a peace officer on vagueness and arbitrary enforcement grounds, Justice O’Connor further suggested that Fifth Amendment concerns are implicated). In view thereof, and as at least suggested by two lower courts (see, People v Velazquez, supra; People v Guilbert, 122 Misc 2d 694, 700-701), People v Bell (supra), in this regard, must be deemed to have been implicitly overruled by People v Berck.
Accordingly, since, unlike those more narrowly circumscribed loitering statutes which have been held to be constitutional in the wake of the Papachristou line of decisions, the instant statute neither delineates a definable act, in addition to loitering, which is to be observed nor delineates an area of a sufficiently restricted public access to sustain a proscription of mere loitering,* ***[5] and since the "satisfactory explanation” *27 provision impermissibly places unfettered discretion in the hands of law enforcement officers, we find that the instant statute is unconstitutional and that defendant’s motion to dismiss the loitering charge on that ground should have been granted.
Hughes, P. J., Sandifer and Ostrau, JJ., concur.

. A defendant by his plea of guilty does not forfeit the right on appeal to challenge the constitutionality of the statute under which he was convicted People v Lee (58 NY2d 491).

. Penal Law § 1990-a (2), the statute at issue in People v Bell (306 NY 110), provided that "[a]ny person who loiters about any toilet, station or station platform * * * of a railroad, or who is found sleeping therein or thereon and who is unable to give satisfactory explanation of his presence is guilty of an offense.”

. Notably, in People v Johnson (6 NY2d 549, 553), where the court upheld the statute prohibiting loitering on school grounds in part relying on People v Bell (306 NY 110), Judge Conway, in concurrence, stated: "I do not think the citations of cases involving railroad stations where people are accustomed to go to see their friends off on trains or to meet them is pertinent. Those places are public places — not school buildings crowded with children.

. Although People v Velazquez (77 Misc 2d 749) was not appealed, the Appellate Division, First Department, in People v Bright (125 AD2d 1016) has only recently summarily affirmed a revisitation by Rothwax, J., of the issues raised in Velazquez. In People v Bright, the defendant was arrested for loitering (Penal Law § 240.35 [7]) in Pennsylvania Station. Bright was searched incident to the loitering arrest and two credit cards were seized. Based upon Bright’s possession of the credit cards he was charged and subsequently indicted (NY County indictment No. 2648/85) for violating Penal Law § 165.45, criminal possession of stolen property in the second degree (the loitering charge was apparently dropped). Defendant moved to suppress the credit cards as the fruits of an illegal search. Justice Rothwax *26 granted that motion, and relied upon People v Velazquez in holding that the search and seizure were irreparably tainted by the unconstitutional arrest. On appeal the People and the defendant Bright focused their argument upon the constitutionality of the loitering arrest (Penal Law § 240.35 [7]); the Appellate Division’s affirmance of the suppression of the evidence in question may reasonably be construed as reflecting agreement by the Appellate Division, First Department, with Rothwax, J.’s premise that the loitering arrest of Bright was unconstitutional.

. Even were we to assume that some facilities might properly be characterized as exclusively devoted to "transportation” and further assume that those facilities would otherwise qualify as places of sufficiently restricted public access to permit enforcement of a loitering statute on those premises, it is perhaps unrealistic to expect the public to readily distinguish between such specialized transportation facilities and mixed use "transportation facilities”.