[S.F. No. 25040. Aug. 22, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
RALPH ALEXANDER CASWELL et al., Real Parties in Interest.

KENNETH EUGENE GRASSI, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

382

COUNSEL

Leo Himmelsbach, District Attorney, and Joseph V. Thibodeaux, Deputy District Attorney, for Petitioner and Real Party in Interest the People.

No appearance for Respondent.

Bruce W. Nickerson, Geoffrey A. Braun, Linda Campbell, Jay M. Kohorn and Fred B. Rosenberg for Real Parties in Interest Caswell et al. and Petitioner Grassi.

Joan W. Howarth, Paul Hoffman, Robert Black, Margaret Crosby, Ed Chen and Alan Schlosser as Amici Curiae on behalf of Real Parties in Interest Caswell et al. and Petitioner Grassi.

## OPINION

**ARGUELLES, J.**—Penal Code section 647, subdivision (d) (hereafter section 647(d)) provides that any person "[w]ho loiters in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act" is guilty of a misdemeanor. (All further statutory references are to the Penal Code unless otherwise stated.) In this proceeding, petitioners Ralph Caswell, Kenneth Grassi, and 14 other persons charged with violating this provision (hereafter defendants) seek dismissal of the charges on the ground that section 647(d) is unconstitutionally vague on its face. As we explain, after a review of the governing federal and state constitutional precedents and an analysis of numerous decisions from other states which have considered comparable vagueness challenges to similar, narrowly focused loitering provisions, we have concluded that section 647(d) is sufficiently definite to withstand defendants' facial constitutional attack.

### FACTS

Defendants were charged in municipal court with violating section 647(d). In addition, several (but not all) of the defendants were also charged with the related misdemeanors of committing a lewd act in a public place (§ 647, subd. (a)) and indecent exposure. (§ 314, subd. 1.) All defendants demurred to the section 647(d) charge, claiming the statute was unconstitutionally vague. The municipal court overruled the demurrers and the superior court denied defendants' subsequent petitions for a writ of prohibition or mandamus. However, the superior court granted rehearing after being alerted to the recent filing of *People* v. *Soto* (1985) 171 Cal.App.3d 1158 [217 Cal.Rptr. 795], which declared section 647(d) unconstitutionally vague. After reconsideration, the superior court granted relief to all defendants except Grassi, whose writ petition was heard and denied by a different judge.

Both the People and Grassi sought appellate review and the Court of Appeal consolidated the cases. Although cognizant of the decision in *Soto,*

*supra,* 171 Cal.App.3d 1158, the Court of Appeal declined to follow that decision and instead found section 647(d) constitutional. As a result, it let issue a peremptory writ of mandate in case number H000940 directing the respondent court to vacate its previous order granting a writ of prohibition or mandate and to instead enter a new order denying the writ petition; in case number H001026, Grassi's petition for a writ of mandate or prohibition was denied. We granted review to address defendants' claim that section 647(d) is unconstitutionally vague. Inasmuch as defendants attack only the facial validity of section 647(d), the underlying facts of these cases are not before us. (See *People* v. *Glaze* (1980) 27 Cal.3d 841, 844 fn.3 [166 Cal.Rptr. 859, 614 P.2d 291].)[1]

## DISCUSSION

█ That no person shall be deprived of life, liberty or property without due process of law is, of course, a cornerstone of our jurisprudence. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 7.) "The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well established element of the guarantee of due process of law." (*In re Newbern* (1960) 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116].) █ To withstand a facial vagueness challenge under the due process clause, a statute must satisfy two basic requirements.

First, a statute must be sufficiently definite to provide adequate notice of the conduct proscribed. "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. [Citations.]" (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126]; see also *Colautti* v. *Franklin* (1979) 439 U.S. 379, 390 [58 L.Ed.2d 596, 606, 99 S.Ct. 675]; *Smith* v. *Goguen* (1974) 415 U.S. 566, 572, fn. 8 [39 L.Ed.2d 605, 611, 94 S.Ct. 1242]; *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, 453 [83 L.Ed. 888, 890, 59 S.Ct. 618]; *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732], cert. den. & app. dism. 466 U.S. 967 [80 L.Ed.2d 812, 104 S.Ct. 2337]; *People* v. *Mirmirani* (1981) 30 Cal.3d 375, 382 [178 Cal.Rptr. 792, 636 P.2d 1130]; see also *Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755 [221 Cal.Rptr. 779, 710 P.2d 845] [vagueness challenge to administrative regulation].) " '[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may

---

[1] Neither do we confront the question of the constitutionality of the statutory requirement that one convicted of violating section 647(d) must register as a sex offender under section 290. (Cf. *In re Reed* (1983) 33 Cal.3d 914 [191 Cal.Rptr. 658, 663 P.2d 216].)

trap the innocent by not providing fair warning.' " (*Hoffman Estates* v. *Flipside, Hoffman Estates* (1982) 455 U.S. 489, 498 [71 L.Ed.2d 362, 371, 102 S.Ct. 1186], quoting *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108 [33 L.Ed.2d 222, 227, 92 S.Ct. 2294].)

Second, a statute must provide sufficiently definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. "A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (*Grayned, supra,* 408 U.S. at pp. 108-109, fn. omitted [33 L.Ed.2d at pp. 227-228].) "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " (*Kolender* v. *Lawson* (1983) 461 U.S. 352, 358 [75 L.Ed.2d 903, 909, 103 S.Ct. 1855], quoting *Smith* v. *Goguen, supra,* 415 U.S. at p. 575 [39 L.Ed.2d at p. 613].)

We evaluate the provisions of section 647(d) against these two due process criteria.

A. *Adequate notice*

Section 647(d) provides: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: . . . (d) Who loiters in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act." ▮▮▮ As we shall see, particularly in light of the clarifying interpretation of the term "lewd and lascivious" in an earlier decision, it is clear that the section provides fair notice to the ordinary citizen of the act proscribed.

At the outset, we note past cases make clear that the statute is not rendered impermissibly indefinite by its use of the word "loiter." ▮▮▮ More than a quarter of a century ago, in *In re Cregler* (1961) 56 Cal.2d 308 [14 Cal.Rptr. 289, 363 P.2d 305], we sustained a different, much less specific, loitering statute against a vagueness challenge, explaining that "the word 'loiter' . . . in our view has a sinister or wrongful . . . implication," excluding "mere waiting for any lawful purpose" but connoting "lingering in the designated places for the purpose of committing a crime as opportunity may be discovered." (*Id.* at pp. 311-312; see also *People* v. *Teresinski* (1982) 30 Cal.3d 822, 830 [180 Cal.Rptr. 617, 640 P.2d 753]; *In re Hoffman* (1967) 67 Cal.2d 845, 853 [64 Cal.Rptr. 97, 434 P.2d 353].) ▮▮▮ Section 647(d), of course, embraces such a "specific intent" requirement *explicitly* in its terms, providing that the statute is violated only when a person "loiters . . . *for the purpose* of engaging in or soliciting any

lewd or lascivious or any unlawful act." (Italics added.) ■ Persons of ordinary intelligence need not guess at the applicability of the section; so long as they do not linger for the proscribed purpose, they have not violated the statute.

■ On a number of occasions, the United States Supreme Court has emphasized the value that a specific intent requirement plays in overcoming the potential vagueness of a statute. As the court noted in *Hoffman Estates, supra,* 455 U.S. at page 499 [71 L.Ed.2d at p. 372], "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." ■ Because section 647(d)'s prohibition on loitering is expressly limited to those who loiter with a specifically defined illicit purpose or intent, the section is considerably narrower than other loitering statutes—like the provision at issue in *Cregler*—which were historically aimed at all manner of "idlers, loafers and wanderers." (See generally *Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156, 156-157 [31 L.Ed.2d 110, 112, 92 S.Ct. 839]; Sherry, *Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision* (1960) 48 Cal.L.Rev. 557, 559-601.)

Nor do the words "in or about any toilet open to the public" appear misleading or cryptic. ■ "It is not required that a statute, to be valid, have that degree of exactness which inheres in a mathematical theorem" (*Smith* v. *Peterson* (1955) 131 Cal.App.2d 241, 246 [280 P.2d 522, 49 A.L.R.2d 1194]); "no more than a reasonable degree of certainty can be demanded." (*Boyce Motor Lines* v. *United States* (1952) 342 U.S. 337, 340 [96 L.Ed. 367, 371, 72 S.Ct. 329]; see also *Burg, supra,* 35 Cal.3d at p. 270; *Mirmirani, supra,* 30 Cal.3d at p. 382.)[2] It is thus clear this statutory phrase is sufficiently definite such that no reasonable person could misunderstand its meaning.

■ ■ ■ ■ Finally, the phrase "lewd or lascivious or any unlawful act," as interpreted by prior case law, also withstands constitutional scrutiny.[3] ■ This court was confronted with construing similar

---

[2] Although "stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech," (*Mirmirani, supra,* 30 Cal.3d at p. 383, quoting *Smith* v. *California* (1959) 361 U.S. 147, 151 [4 L.Ed.2d 205, 210, 80 S.Ct. 215]), none of the parties in this case claim that section 647(d) impinges on constitutionally protected speech.

[3] The phrase "or any unlawful act" has been properly construed in this context to mean a "lewd" act. "As for the 'unlawful' act prohibited by section 647, subdivision (d), the word means under the doctrine of *ejusdem generis* and in the context of this subdivision, a 'lewd' act." (*People* v. *Ledenbach* (1976) 61 Cal.App.3d Supp. 7, 10 [132 Cal.Rptr. 643] [italics in original]; see also *People* v. *S. P.* (1980) 115 Cal.App.3d Supp. 12, 16 [170 Cal.Rptr. 478].)

language in section 647, subdivision (a) in *Pryor v. Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636]. We concluded the "terms 'lewd' and 'dissolute' . . . are synonymous, and refer to conduct which involves the touching of the genitals, buttocks, or female breast for the purpose of sexual arousal, gratification, annoyance or offense, if the actor knows or should know of the presence of persons who may be offended by his conduct." *(Id.* at p. 256.) This limitation "serves not only to define the reach of the law but also to add a requirement of specific intent, a feature which has often served to avert a determination that a statute is unconstitutionally vague. [Citation.]" *(Ibid.)* We thus conclude section 647(d) satisfies the "fair notice" prong of the void-for-vagueness test.

### B. *Adequate guidelines to permit nonarbitrary enforcement*

 Defendants' principal argument is that even if the provisions of section 647(d) are sufficiently definite to put the average citizen on notice as to the conduct which is proscribed by the statute, the statute nonetheless violates constitutional standards because it fails to set forth sufficient guidelines for law enforcement, thus creating an unconstitutional risk of arbitrary and discriminatory enforcement. In this regard, defendants rely heavily on the recent Court of Appeal opinion in *Soto, supra,* 171 Cal.App.3d 1158, which found section 647(d) unconstitutional on this very basis.

In reaching this conclusion, the *Soto* court rested its holding largely on the reasoning of the then-recent United States Supreme Court decision in *Kolender, supra,* 461 U.S. 352, in which the high court sustained a vagueness challenge to a different subdivision of section 647—section 647, subdivision (e) (hereafter section 647(e))—which provided that a person was guilty of a misdemeanor if he "loiters . . . upon the streets . . . without apparent reason or business and . . . refuses to identify himself or to account for his presence when requested by an peace officer so to do . . . ." Because of the central role *Kolender* assumed in the *Soto* court's analysis, *Kolender* is a logical starting point for our analysis of defendants' present claim.

In *Kolender, supra,* 461 U.S. 352, the state defended section 647(e) against the defendant's vagueness challenge by pointing to an earlier state court decision—*People v. Solomon* (1973) 33 Cal.App.3d 429, 438-439 [108 Cal.Rptr. 867]—which, in upholding the statute against a prior constitutional challenge, had construed section 647(e) to simply require a person to

---

Thus, the dissenting opinion's concern that the term "any unlawful act" fails to provide constitutionally adequate notice is unfounded.

present "credible and reliable" identification when stopped by the police. The *Solomon* court defined "credible and reliable" identification as that "carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself." (*Ibid.*)

The United States Supreme Court found even this limiting judicial gloss insufficient to save the constitutionality of the section, explaining: "Section 647(e), as presently drafted and as construed by the state courts, contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification. As such, the statute vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest. An individual, whom police may think is suspicious but do not have probable cause to believe has committed a crime, is entitled to continue to walk the public streets 'only at the whim of any police officer' who happens to stop that individual under § 647(e). [Citation.]" (*Kolender, supra,* 461 U.S. at p. 358 [75 L.Ed.2d at p. 909].) Later, the high court observed: "It is clear that the full discretion accorded to the police to determine whether the suspect has provided a 'credible and reliable' identification necessarily 'entrust[s] law-making "to the moment-to-moment judgment of the policeman on his beat." ' [Citations.] Section 647(e) 'furnishes a convenient tool for "harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure," ' [citations], and 'confers on police a virtually unrestrained power to arrest and charge persons with a violation.' " (*Id.* at p. 360 [75 L.Ed.2d at p. 911].)

The *Soto* court found the high court's critical analysis of section 647(e) equally applicable to section 647(d). It stated: "Fatally absent from section 647, subdivision (d) . . . are objective criteria to guide an officer's decision making process with regard to the criminality of an actor's conduct. Hence, discretion to determine the actor's intent or 'purpose' rests solely within the subjective thought processes of police officers who are free at whim to decide in each case whether the requisite intent to engage in or solicit 'any lewd or lascivious or any unlawful act' accompanies the act of loitering. . . . This unfettered discretion clearly offends California and the United States constitutional concepts of due process of law for it permits the criminality of conduct to be measured 'by community or even individual notions of what is distasteful behavior.' [Citation.]" (*Soto, supra,* 171 Cal.App.3d at p. 1166.)

In reaching this conclusion, however, we think that the *Soto* court failed to take adequate account of the significant differences between the loitering

provision at issue in *Kolender* and the provisions of section 647(d), and also overlooked the significant body of out-of-state decisions which have upheld the constitutionality of loitering statutes—like section 647(d)—that narrow the discretion of enforcing officials by (1) limiting the section's reach to persons who loiter with a specified illicit purpose and (2) confining the statute's operation to defined geographical locations in which loitering for the proscribed purposes has historically been a problem.[4]

As we have seen, the key portion of the loitering provision at issue in *Kolender* was the requirement that an individual, who the police believed was loitering or wandering upon the streets without apparent reason or business, provide "credible and reliable" evidence of his or her identity; if the person failed to provide such "credible and reliable" identification, he or she was guilty of a crime. Because the statute, even with the judicial gloss, contained "no standard for determining what a suspect ha[d] to do to satisfy the requirement to provide a 'credible and reliable' identification" (*Kolender, supra,* 461 U.S. at p. 358 [75 L.Ed.2d at p. 909]), the *Kolender* court concluded that the provision effectively made the very definition of the crime subject to the personal standards of each individual law enforcement officer.

By contrast, section 647(d) vests no such discretion with law enforcement. The essence of this provision is loitering in a certain place while entertaining a specified criminal intent. One need not expressly satisfy a policeman's curiosity in order to be entitled to freely walk the streets or use public restrooms. A person is subject to arrest under the provision only if his or her conduct gives rise to probable cause to believe that he or she is loitering in or about a public restroom with the proscribed illicit intent.

The *Soto* court, while recognizing the important interests served by section 647(d), felt that the provision was unnecessary in light of the existence of other criminal provisions—for example, the provisions prohibiting the actual public solicitation of lewd or lascivious conduct or prohibiting

---

[4] I concurred in the *Soto* opinion while serving on the Court of Appeal, but I am now persuaded by the arguments supporting the constitutionality of section 647(d) and thus I have concluded that the *Soto* decision should be disapproved. Although, as Justice Jackson has noted, "it is embarassing to confess a blunder" (*United States* v. *Bryan* (1950) 339 U.S. 323, 346 [94 L.Ed. 884, 898, 70 S.Ct. 724] (Jackson, J., conc.), as he also noted "it may prove more embarrassing to adhere to it." (*Ibid.*) And as Justice Rutledge once observed: " 'Wisdom too often never comes, and so one ought not to reject it merely because it comes late.' " (*Wolf* v. *Colorado* (1949) 338 U.S. 25, 47 [93 L.Ed. 1782, 1795, 69 S.Ct. 1359] (Rutledge, J., dis.) I take solace in the fact that I am in good company in declining to adhere to earlier views in the face of later, more compelling arguments. (See also *King* v. *Central Bank* (1977) 18 Cal.3d 840, 849-850 [135 Cal.Rptr. 771, 558 P.2d 857] (Mosk, J., conc.); *People* v. *Webb* (1986) 186 Cal.App.3d 401, 412-413 [230 Cal.Rptr. 755] (Sims, J., conc.); *Taylor* v. *Jones* (1981) 121 Cal.App.3d 885, 890, fn. 3 [175 Cal.Rptr. 678] (Puglia, P. J.).)

indecent exposure. The *Soto* court reasoned that in order to constrain section 647(d) within constitutional bounds a police officer would not have probable cause to believe an individual was loitering with the requisite illicit intent unless the individual committed such an independent criminal act. Since the commission of such an act would be separately punishable in any event, the *Soto* court concluded that section 647(d) was unnecessary and for that reason unconstitutional. (*Soto, supra,* 171 Cal.App.3d at p. 1168.)

We believe the *Soto* court's reasoning is flawed on several levels. First, even if probable cause to arrest for a violation of section 647(d) could only arise when a suspect committed some other, independently punishable act, that would be an insufficient justification for invalidating the statute as unconstitutional. It is axiomatic the Legislature may criminalize the same conduct in different ways. (See, e.g., *United States* v. *Batchelder* (1979) 442 U.S. 114, 123-124 [60 L.Ed.2d 755, 764-765, 99 S.Ct. 2198]; *People* v. *Pearson* (1986) 42 Cal.3d 351, 354 [228 Cal.Rptr. 509, 721 P.2d 595].) And, in this context, a prosecutor could very reasonably choose to charge a defendant with violating both section 647(d) and another criminal provision, for example, solicitation. In such a case, even if a jury was not convinced beyond a reasonable doubt that the defendant had actually solicited a lewd act, it could still properly find that the evidence of the alleged solicitation, combined with other noncriminal actions of the defendant, was sufficient to establish beyond a reasonable doubt that the defendant was loitering in or about the restroom for the specified illicit purpose.

 Moreover, we think the *Soto* court was mistaken in suggesting that section 647(d) could only be rendered constitutional if it were interpreted to require that the defendant commit an independent criminal act. Defendants join in that contention here, arguing that unless the commission of such an independent criminal act is required, section 647(d) would confer upon police the power to arrest suspicious persons based solely on their engaging in innocent conduct. This is true, they claim, because section 647(d) improperly allows arrests after a policeman's observation of *non-criminal* conduct on the theory that such conduct may permit an inference that an individual harbors the intent to engage in or solicit a lewd act.

There are two problems with defendants' argument. First, we can readily envision numerous situations where noncriminal conduct may legitimately give rise to probable cause to believe an individual is in violation of section 647(d). For example, an officer may personally know an individual and may be aware that the individual has repeatedly solicited or committed lewd acts at the same location in the past. ██ ██ Under such circumstances, if the officer observes the individual linger suspiciously in the restroom for an inordinately long period of time, he might properly

infer that the suspect did not have an innocent intent.[5] In other cases, a police officer may have information from a reliable informant that a particular individual has disclosed his intent to frequent a particular public restroom to attempt to solicit acts in the restroom; in that situation too, the officer may well have probable cause to infer the suspect's intent even if the suspect has not yet committed indecent exposure or an actual solicitation. Similarly, complaints by citizens who have used a certain restroom that an individual was lingering inside engaging in suggestive conduct—not amounting to an actual solicitation or indecent exposure—may legitimately give rise to a reasonable inference that the individual harbors the illicit intent.

The Model Penal Code is instructive on this point. Section 251.3 of that code sets forth a loitering statute similar to section 647(d), which states: "A person is guilty of a petty misdemeanor if he loiters in or near any public place for the purpose of soliciting or being solicited to engage in deviate sexual relations." Although the commentary to this section recognizes that "the act of loitering in or near a public place [may] not itself [be] reliably confirmatory of an intent to solicit, or to be solicited for, deviate sexual relations" (Model Pen. Code & Commentaries, com. 3 to § 251.3, p. 476), the commentary suggests that in applying the provision officials can assure a properly restrained enforcement by requiring "that the actor confirm the purpose that the trier of fact seeks to infer by some overt act of solicitation *or by some other firm indication that his purpose is within the objective sought to be prevented by Section 251.3.*" (*Id.* at p. 477, italics added.) Thus, the Model Penal Code is consistent with our view that a police officer need not observe a criminal act before he may infer a person is loitering with the requisite illicit intent.

■■■ The second flaw in both the *Soto* court's and defendants' argument that section 647(d) confers too much discretion upon police was accurately exposed by the Court of Appeal below. "The concern which the defendants expressed, and which apparently moved the *Soto* court, is that 'policemen, prosecutors, and juries' will arbitrarily disregard the definitions [of crimes] and also the rules of probable cause and proof. If this is, indeed, a constitutionally significant flaw, then it is a flaw which would invalidate not only subdivision (d) but many other criminal statutes as well. We consider such a conclusion unreasonable and unrealistic. The defendants'

---

[5] Of course, while evidence of past acts is not admissible to prove "conduct on a specified occasion" (Evid. Code, § 1101, subd. (a)), it is admissible to prove a disputed fact other than one's propensity to commit a crime, such as intent. (Evid. Code, § 1101, subd. (b).) Further, it is clear a police officer may consider such past acts when determining whether reasonable cause to arrest exists. (See, e.g., *People* v. *Martin* (1973) 9 Cal.3d 687, 692 & fn. 5 [108 Cal.Rptr. 809, 511 P.2d 1161], cert. den. 414 U.S. 1113 [38 L.Ed.2d 740, 94 Cal.Rptr. 844].)

concerns can be adequately dealt with in the course of prosecution of individual cases on their individual facts; these concerns are not an adequate predicate for finding that the statute is invalid on its face."

Of course, section 647(d) is not the only law which defines a crime in terms of a noncriminal act coupled with a specific intent. ■ For example, "an attempt to commit a crime requires proof of a specific intent to commit the crime and of 'a direct but ineffectual act done toward its commission.'" (*People* v. *Dillon* (1983) 34 Cal.3d 441, 452 [194 Cal.Rptr. 390, 668 P.2d 697], quoting CALJIC No. 6.00.) Moreover, "[a]cts that could conceivably be consistent with innocent behavior may, in the eyes of those with knowledge of the actor's criminal design, be unequivocally and proximately connected to the commission of the crime . . . ." (*Id.* at p. 455.) Thus, a criminal attempt may consist of an otherwise innocent act coupled with the specific intent to commit a crime. ■ That a policeman may arrest an individual for an attempted crime based on his observation of the individual's commission of an apparently innocent act does not inexorably lead to a conclusion that the statute itself (§ 664) is unconstitutionally vague for failing to set forth sufficient guidelines for police. Instead, the proper inquiry would be whether the evidence known by the arresting officer was sufficient to constitute probable cause to arrest.[6]

■ Similarly, the crime of conspiracy is complete "when two or more persons agree to commit a crime and do some overt act in furtherance of the agreement." (*People* v. *Cockrell* (1965) 63 Cal.2d 659, 667; §§ 182, 184 [47 Cal.Rptr. 788, 408 P.2d 116].) "The overt acts need not be in themselves criminal in nature so long as they are done in pursuance of the conspiracy. [Citations.]" (*People* v. *Robinson* (1954) 43 Cal.2d 132, 139 [271 P.2d 865].) As with a criminal attempt, the crime of conspiracy may thus consist of an otherwise innocent act coupled with a certain criminal intent. ■ Although no guidelines are set forth in the conspiracy statutes to assist police officers in determining when an otherwise innocent act justifies an arrest for conspiracy, that omission does not lead us to find sections 182 and 184 unconstitutionally vague for conferring too much discretion on law enforcement. Instead, we again conclude that any fear of arbitrary or discriminato-

---

[6]This distinction was recognized in *People* v. *Smith* (1978) 44 N.Y.2d 613 [407 N.Y.S.2d 462, 466, 378 N.E.2d 1032], involving the state of New York's statutory prohibition of loitering for the purpose of prostitution: "It might be true, as defendant claims, that in rare instances unless an officer has a basis for his belief of what is actually transpiring, based on items other than his mere observations, there would be no probable cause to make an arrest. There is also a remote possibility that a person involved in innocent conversation, such as a pollster or one seeking directions, might be arrested, but that is not envisioned by the statute and the mere fact that an officer in a particular case did not have probable cause to arrest that defendant would not warrant invalidation of the statute." (*Id.* at p. 621 [407 N.Y.S.2d at p. 467].)

ry enforcement of our conspiracy laws is generated by the possibility of overzealousness on the part of the arresting officer and not vagueness in the criminal statute.

 Defendants counter that the law of attempts and the law of conspiracy make poor analogies since both require an overt act for a completed crime. By contrast, they suggest that section 647(d) does not require an overt act, thus making section 647(d) much more indefinite than either sections 664 or 182. However, this argument ignores the fact that section 647(d) also specifies an overt act: loitering near a public restroom. This act, if done with the requisite intent to engage in or solicit a lewd act, constitutes the completed crime.

Defendants find this answer lacking and contend that loitering is not an affirmative criminal act but is instead "mere presence" at a certain place. However, "mere presence" can, in some circumstances, constitute the actus reus of a crime. (See, e.g., § 602 [trespass]; § 626.2 [unauthorized entry upon a college campus]; § 627.2 [remaining on school grounds during school hours without having registered with the principal].) Thus, "mere presence" can constitute a criminal act where, as here, such act is coupled with a criminal intent.

In concluding that section 647(d) was unconstitutional, the *Soto* court failed to take adequate account of numerous decisions in other states which have upheld loitering statutes similar to section 647(d) in the face of constitutional vagueness attacks. An illustrative case is *People* v. *Pagnotta* (1969) 25 N.Y.2d 333 [305 N.Y.S.2d 484, 253 N.E.2d 202, 48 A.L.R.3d 1264]. In *Pagnotta,* the New York Court of Appeals was faced with a loitering statute quite similar to section 647(d) but upheld the law against a constitutional void-for-vagueness challenge. As described in a later New York case, "the statute under scrutiny [in *Pagnotta*] provided that '[a] person who *** [u]ses, resorts to or loiters about any stairway, staircase, hall, roof, elevator, cellar, courtyard or any passageway of a building for the purpose of unlawfully using or possessing any narcotic drug, [i]s guilty of a misdemeanor' [Citation.] The lifeline, clearly visible and intelligible, which saved that enactment from the fate of those struck down for vagueness was the act's prohibition of 'loitering *for the purpose* of committing the crime of unlawfully using or possessing narcotic drugs' [Citation.]" (*People* v. *Smith, supra,* 44 N.Y.2d at p. 620 [407 N.Y.S.2d at p. 466] [italics in original], quoting *Pagnotta, supra,* 25 N.Y.2d at p. 338 [305 N.Y.S.2d at p. 488].) As in *Pagnotta,* section 647(d) provides some guidance as to how a policeman's discretion should be exercised by limiting the scope of the loitering statute with a mental component.

A majority of other states also recognize that a specific intent requirement can insulate a loitering statute from constitutional attack on vagueness grounds. For example, the Georgia Supreme Court held a local ordinance prohibiting loitering for the purpose of prostitution was valid, saying, "The ordinance does not forbid loitering in public places, including legal 'window shopping.' Rather, it is strictly limited to loitering in a public place *for specific, illegal purposes.*" (*Lambert* v. *City of Atlanta* (1978) 242 Ga. 645, 646 [250 S.E.2d 456, 457], italics added.) Similarly, an Arizona court upheld an ordinance prohibiting loitering for the purpose of begging, explaining "that the proscription of the act of loitering, when combined with the purpose of begging . . . , puts a reasonable person on notice as to exactly what conduct is forbidden." (*State* v. *City Court of Tucson* (1974) 21 Ariz.App. 489, 493 [520 P.2d 1166, 1170]; see also *State* v. *Cook* (1984) 139 Ariz. 406, 408 [678 P.2d 987, 989] [citing *City Court* approvingly].)

In striking down a statute prohibiting loitering near pinball machines, the Hawaii Supreme Court distinguished two cases cited by the People in support, noting that unlike those cases, the statute in question "contains no additional requirement of unlawful intent to give meaning to the loitering provision within the statute." (*State* v. *Bloss* (1980) 62 Hawaii 147, 152 [613 P.2d 354, 357-358].) Although our sister states are not unanimous on this point, it appears the majority of the decisions have held such loitering statutes are not unconstitutionally vague if they require a specific intent in addition to the act of loitering. (See *Short* v. *City of Birmingham* (Ala.Crim.App. 1981) 393 So.2d 518; *City of South Bend* v. *Bowman* (Ind.App. 1982) 434 N.E.2d 104; *State* v. *Armstrong* (1968) 282 Minn. 39 [162 N.W.2d 357]; *State* v. *Evans* (1985) 73 N.C.App. 214 [326 S.E.2d 303] [intent requirement renders the statute not void for overbreadth]; *City of Akron* v. *Parrish* (1981) 1 Ohio Misc.2d 7 [437 N.E.2d 1220]; *City of Seattle* v. *Jones* (1971) 79 Wn.2d 626 [488 P.2d 750]; *City of Milwaukee* v. *Wilson* (1980) 96 Wis.2d 11 [291 N.W.2d 452]. See, however, contra, *Brown* v. *Municipality of Anchorage* (Alaska 1978) 584 P.2d 35; *People* v. *Gibson* (1974) 184 Colo. 444 [521 P.2d 774]; *Christian* v. *City of Kansas City* (Mo.App. 1986) 710 S.W.2d 11 [court did not directly address whether intent limited vagueness of the statute]; *Profit* v. *City of Tulsa* (Okla.Cr. 1980) 617 P.2d 250.)

Aside from the scienter requirement, the language in section 647(d) that specifies the place of enforcement also serves to mitigate the potential vagueness of the statute. Thus, by limiting the reach of section

647(d) to loitering "in or about any toilet open to the public," police discretion is further circumscribed and the definiteness of the statute is increased.[7]

 The importance of limiting the place of enforcement in order to mitigate a statute's potential vagueness has been recognized in other states. In *People v. Clark* (N.Y. App. Term 1987) 135 Misc.2d 22 [515 N.Y.S.2d 382], the court was faced with a vagueness challenge to a law which made a person guilty of loitering when he "loiters or remains in any transportation facility, . . . and is unable to give a satisfactory explanation of his presence." (*Clark, supra,* at p. 23 [515 N.Y.S.2d at p. 383], quoting N.Y. Pen. Law § 240.35(7).) The court explained that "the vagueness of a proscription of loitering alone . . . [may] be overcome by . . . the designation that loitering is prohibited *in a specific place of restricted public access* [citation]." (*Ibid.*, italics added; see also *People v. Guilbert* (N.Y. City Crim. Ct. 1983) 122 Misc.2d 694, 698-699 [472 N.Y.S.2d 90, 93-94].)[8]

This is consistent with the position taken by the Wisconsin Supreme Court in *State v. Starks* (1971) 51 Wis.2d 256 [186 N.W.2d 245], which held a loitering statute would be impermissibly vague unless limited as to scope, *place,* or purpose. (*Starks, supra* at p. 262 [186 N.W.2d at p. 248]; see also discussion of *Starks* in *City of Milwaukee v. Wilson, supra,* 96 Wis.2d 11, 16-19 [291 N.W.2d 452, 456-457].) By limiting the scope of the statute to include only those loitering in a certain place, the likelihood section 647(d) will permit arbitrary or discriminatory enforcement is thus reduced.

 One final point deserves mention. Although an enactment's potential vagueness may be ameliorated by the express enumeration of observable behavior which can serve to guide police discretion,[9] a loitering statute that

---

[7] The Legislature's decision to confine the reach of section 647(d) to public restrooms was probably due to the frequency with which such places are chosen by those intending to engage in or to solicit a lewd act. "Activity in public restrooms presents the most serious challenge to enforcement agencies in terms of frequency of the activity, gravity of the offense likely to be committed, and degree of conspicuousness." (Project, *The Consenting Adult Homosexual and the Law: An Empirical Study of Enforcement and Administration in Los Angeles County* (1966) 13 UCLA L.Rev. 643, 689, fn. omitted [hereafter cited as *Project*].)

[8] The court in *Clark* found the transportation facility involved in that case, the Port Authority Bus Terminal, was not a place of restricted public access within the meaning of the relevant loitering statute since, in addition to being a transportation facility, it was a "multidimensional, multipurpose" facility. (*Clark, supra,* 135 Misc.2d 22, [515 N.Y.S.2d 382, 384].) In another recent New York decision, however, a court found that the transportation facility at issue in that case was a place of restricted public access and upheld the application of the transportation facility loitering law as applied to such a facility. (See *People v. Goodwin* (N.Y. Crim. Ct. 1987) 136 Misc.2d 657 [519 N.Y.S.2d 189].)

[9] See, for example, *People v. Smith, supra,* 44 N.Y.2d 613 [407 N.Y.S.2d 462]; *Short v. City of Birmingham, supra,* 393 So.2d 518 (finding specified behavior in statute was sufficient to justify rejection of a vagueness challenge); *City of Akron v. Massey* (1978) 56 Ohio Misc. 22 [10 Ohio Ops. 3d 216, 381 N.E.2d 1362] (same); *In the Matter of D.* (1976) 27 Ore.App. 861

fails to do so is not necessarily unconstitutionally vague. ▉ "The fact that [the Legislature] . . . might, without difficulty, have chosen '[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague. [Citation.]" (*United States* v. *Powell* (1975) 423 U.S. 87, 94 [46 L.Ed.2d 228, 235, 96 S.Ct. 316], quoting *United States* v. *Petrillo* (1947) 332 U.S. 1, 7 [91 L.Ed. 1877, 1882, 67 S.Ct. 1538].) ▉ Although section 647(d) fails to list actions which, if observed, give rise to a legitimate inference of the prohibited intent, it nevertheless provides sufficient guidance to police by requiring the loitering be done with a specific intent and within a designated area. We thus conclude section 647(d) is not unconstitutionally vague.

▉ Although we find section 647(d) constitutional, we are nevertheless aware of the long and checkered history of loitering statutes in both California and throughout the country. (See *Papachristou, supra,* 405 U.S. at pp. 161-162 [31 L.Ed.2d at pp. 114-116] and accompanying notes; Model Pen. Code & Com., com. 1 to § 250.6, pp. 383-387; Sherry, *supra,* 48 Cal.L.Rev. 557.) Moreover, there is the possibility that section 647(d) may serve as a vehicle for harassment of citizens based on their unorthodox lifestyles or sexual orientation.[10] Because the potential for discriminatory enforcement is more pronounced in loitering cases than in most other contexts, we stress that a potential suspect's sexual orientation is not, in itself, a sufficient "articulable fact" to give rise to probable cause and that the police must apply equal standards to both homosexuals and heterosexuals in determining whether an individual's conduct in fact provides probable cause to believe that he is loitering with the proscribed intent. ▉ Just as all races have the equal right to use the public streets in all neighborhoods without fear of being arrested on a "guilt by association" theory (see, e.g., *People* v. *Bower* (1979) 24 Cal.3d 638, 644-645 [156 Cal.Rptr. 856, 597 P.2d 115]), both homosexual and heterosexual persons must have the equal right to use public restrooms without fear of police harassment.

[557 P.2d 687] (same); *City of Seattle* v. *Jones, supra,* 79 Wn.2d 626 [488 P.2d 750] (same); but see *Christian* v. *City of Kansas City, supra,* 710 S.W.2d 11 (specification of overt conduct in a loitering statute was inadequate to save an ordinance from a void-for-vagueness challenge).

[10] As one empirical study commented, "[h]arassment is used against suspected homosexuals in parks, in areas contiguous to public restrooms, and in homosexual bars. If a [police] decoy operating in a park or restroom fails to obtain a solicitation, he may order the suspect to leave the area and threaten to arrest him if he returns. Harassment is practiced by the smaller jurisdictions which have no interest in making arrests and are concerned only with getting the homosexual out of town." (*Project, supra,* 13 UCLA L.Rev. at pp. 718-719, fns. omitted; see also Milner, *Supreme Court Effectiveness and the Police Organization* (1971) 36 Law & Contemp. Probs. 467, 478 ["there is ample evidence showing that police officers stop, question, and threaten people with arrest, or in fact arrest them, because they do not like their lifestyle or political views. [fns. omitted]"].)

## C. *Other issues*

■ In addition to the vagueness arguments discussed, *ante,* defendants also contend section 647(d) violates the separation of powers doctrine by transforming every police officer into a "mini-legislature" with the power to determine on an ad hoc basis what types of behavior constitute a crime. (See Cal. Const., art. III, § 3 ["The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."].) As we previously explained, section 647(d) does not vest law enforcement with such a power. Any discretion possessed by police to determine whether a crime has occurred is merely a question of probable cause to arrest and not a flaw in the definition of the crime itself.

■ Defendants also complain section 647(d) violates the state constitutional command that "[a]ll laws of a general nature have uniform operation." (Cal. Const., art. IV, § 16.) In other words, they contend section 647(d) is so uncertain that it will result in a failure to prosecute in some cases where the identical conduct in another part of the state will result in prosecution. Defendants cite *Newbern, supra,* 53 Cal.2d 786, in support. In *Newbern,* we held a defendant's conviction for vagrancy based on his status as a "common drunkard" was unconstitutional and in violation of the uniform-operation requirement since the term "common drunkard" was too vague. (*Id.* at p. 792.) However, *Newbern* is unpersuasive since, unlike the term "common drunkard," we conclude the terms "loiter" and "lewd intent" are sufficiently clear to avoid any problems under the uniform-operation-of-law provision in our state's Constitution.

### CONCLUSION

In sum, we conclude section 647(d) survives defendants' constitutional attack on vagueness grounds since it neither denies fair notice of the acts proscribed nor vests constitutionally impermissible discretion in the hands of police.

The judgment of the Court of Appeal is affirmed. The stays of defendants' respective trials, issued by the lower court and continued by this court, are dissolved.

Lucas, C. J., Panelli, J., Eagleson, J., and Kaufman, J., concurred.

**MOSK, J.**—I dissent.

Vagrancy laws have traditionally been used to clear the streets of persons who have committed no crime but are nevertheless deemed repugnant to

segments of society. "These statutes are in a class by themselves, in view of the familiar abuses to which they are put. . . . Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of the police and prosecution, although not chargeable with any particular offense." (*Winters* v. *New York* (1948) 333 U.S. 507, 540 [92 L.Ed. 840, 862, 68 S.Ct. 665] (dis. opn. of Frankfurter, J.), quoted in *Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156, 166 [31 L.Ed.2d 110, 118, 92 S.Ct. 839].)

Vagrancy laws have been meeting an unsympathetic fate as courts become increasingly aware of the manner in which vagueness contributes to abuse by authorities. Over the years a plethora of well-considered opinions invalidated all or part of one after another of such laws, both at the federal and state levels. (See, e.g., *Papachristou* v. *City of Jacksonville, supra,* 405 U.S. 156; *Kolender* v. *Lawson* (1983) 461 U.S. 352 [75 L.Ed.2d 903, 103 S.Ct. 1855]; *People* v. *Soto* (1985) 171 Cal.App.3d 1158, 1168 [217 Cal.Rptr. 795]; *Gates* v. *Municipal Court* (1982) 135 Cal.App.3d 309, 320 [185 Cal.Rptr. 330]; *Ghafari* v. *Municipal Court* (1978) 87 Cal.App.3d 255, 262 [150 Cal.Rptr. 813, 2 A.L.R.4th 1230]; *People in Interest of C. M.* (Colo. 1981) 630 P.2d 593; *Sawyer* v. *Sandstrom* (5th Cir. 1980) 615 F.2d 311, 318; *City of Bellevue* v. *Miller* (1975) 85 Wn.2d 539 [536 P.2d 603, 608]; *State* v. *Debnam* (1975) 23 Ore.App. 433 [542 P.2d 939, 942]; *State* v. *Martinez* (1975) 85 Wn.2d 671 [538 P.2d 521, 527]; *United States* ex rel. *Newsome* v. *Malcolm* (2d Cir. 1974) 492 F.2d 1166, 1174; *People* v. *Gibson* (1974) 184 Colo. 444 [521 P.2d 774, 775]; *City of Seattle* v. *Pullman* (1973) 82 Wn.2d 794 [514 P.2d 1059]; *Anderson* v. *Nemetz* (9th Cir. 1973) 474 F.2d 814, 817; *People* v. *Berck* (1973) 32 N.Y.2d 567 [300 N.E.2d 411, 416]; *In re Doe* (1973) 54 Hawaii 647 [513 P.2d 1385, 1389]; *Hall* v. *United States* (D.C. Cir. 1972) 148 App.D.C. 42 [459 F.2d 831, 840]; *State* v. *Starks* (1971) 51 Wis.2d 256 [186 N.W.2d 245, 250]; *State* v. *Aucoin* (Me. 1971) 278 A.2d 395, 397; *State* v. *Grahovac* (1971) 52 Hawaii 527 [480 P.2d 148, 153]; *Hayes* v. *Municipal Court of Oklahoma City* (Okla.Crim. 1971) 487 P.2d 974, 981; *Arnold* v. *City and County of Denver* (1970) 171 Colo. 1 [464 P.2d 515, 517]; *City of Portland* v. *White* (1972) 9 Ore.App. 239 [495 P.2d 778, 780]; *Goldman* v. *Knecht* (D.Colo. 1969) 295 F.Supp. 897, 906; *Lazarus* v. *Faircloth* (S.D.Fla. 1969) 301 F.Supp. 266, 273; *City of Portland* v. *James* (1968) 251 Ore. 8 [444 P.2d 554, 558]; *Ricks* v. *District of Columbia* (D.C. Cir. 1968) 134 App.D.C. 201 [414 F.2d 1097, 1110]; *City of Seattle* v. *Drew* (1967) 70 Wn.2d 405 [423 P.2d 522, 525, 25 A.L.R.3d 827]; *Alegata* v. *Commonwealth* (1967) 353 Mass.287 [231 N.E.2d 201, 205]; *Headley* v. *Selkowitz* (Fla. 1965) 171 So.2d 368, 370 [12 A.L.R.3d 1443]; *Cleveland* v. *Baker* (1960) 83 Ohio L.Abs. 502 [167 N.E.2d 119, 121]; *People* v. *Diaz* (1958) 4 N.Y.2d 469 [151 N.E.2d 871]; *Soles* v. *City of Vidalia* (1955) 92 Ga.App. 839 [90 S.E.2d 249, 252]; *Commonwealth* v. *Carpenter* (1950) 325

Mass. 519 [91 N.E.2d 666, 667]; *Territory of Hawaii* v. *Anduha* (9th Cir. 1931) 48 F.2d 171, 173; *Stoutenburgh* v. *Frazier* (1900) 16 App.D.C. 229, 240; see *Shuttlesworth* v. *Birmingham* (1965) 382 U.S. 87, 90 [15 L.Ed.2d 176, 179, 86 S.Ct. 211]; *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 253 [158 Cal.Rptr. 330, 599 P.2d 636].)

In this case we must decide whether Penal Code section 647, subdivision (d) (hereafter section 647(d)) is unconstitutionally vague in violation of the due process clause of article I, section 15, of the California Constitution. The United States Supreme Court has explained: "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (*Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108-109, fn. omitted [33 L.Ed.2d 222, 227-228, 92 S.Ct. 2294].)

Our court has observed that "it is established that due process requires a statute to be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. [Citations.]" (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269, fn. omitted [198 Cal.Rptr. 145, 673 P.2d 732], app. dism. and cert. den. (1984) 466 U.S. 967 [80 L.Ed.2d 812, 104 S.Ct. 2337].) With regard to this second component, we declared that "vague statutory language . . . creates the danger that police, prosecutors, judges and juries will lack sufficient standards to reach their decisions, thus opening the door to arbitrary or discriminatory enforcement of the law." (*Pryor* v. *Municipal Court, supra,* 25 Cal.3d 238, 252.)

Section 647(d) has two essential elements. The first is, "loiters." That clearly requires objective conduct, but certainly it cannot be contended that lingering or loitering alone, in a public place, renders one subject to criminal prosecution. The second aspect of the section requires that the loitering be *"for the purpose* of engaging in or soliciting any lewd or lascivious or any unlawful act." That clearly requires *intent*; it contemplates that no such actual conduct occurred, but only that it be subjectively contemplated.

As the court observed in *Bank of America etc. Assn.* v. *Kelsey* (1935) 6 Cal.App.2d 346, 351 [44 P.2d 617], intention "is a state of mind and, until

communicated or manifested, is known only to its possessor." This court, in *People* v. *Fewkes* (1931) 214 Cal. 142, 148 [4 P.2d 538], declared that "Intent is a question of fact which may be proved like any other fact, by acts, conduct and circumstances connected with the offense." The majority have not satisfactorily explained how intent can be determined when there are no accompanying acts or conduct. Perhaps they anticipate a court somehow miraculously peering into the inner recesses of the mind. A crystal ball might be helpful.

To compound the problems with the statute, I find the phrase "any unlawful act" to be about as vague and uncertain a term as can be devised. The Penal Code contains sections 1 to 14102, and various state and municipal codes contain innumerable additional prohibitions. It cannot be seriously contended that "any unlawful act" places a person on adequate notice as to what laws he may not subjectively intend to violate at some imprecise future time in the course of his dallying.

The majority, perhaps inadvertently, reveal one of the ways in which this vague statute can be—and probably is—misused. They indicate that *noncriminal conduct* may give rise to probable cause to believe an individual is in violation of 647(d) if a police officer may personally know that the person has violated the law in the past. (Maj. opn., *ante,* p. 395.) I need cite no authority for the universally accepted proposition that previous conduct, or even purported propensity to commit crimes, does not justify an arrest when no actual crime is being or has been committed. That the majority would seriously advance a contrary theory is ominous.

There can be no doubt that a penal statute is void on its face if it forbids "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) All persons are required to avoid unlawful conduct, but to do so they must be told in clear and unequivocal terms precisely what conduct is unlawful.

The statute at issue refers to only one act that constitutes conduct: loitering. Yet loitering—i.e., lingering, dawdling, loafing, tarrying, lazying, lagging, idling, dallying—admittedly is not in itself a criminal offense. That leaves only intent as the prohibited element. Thus to be vulnerable to prosecution, a person must linger near a restroom and think or fantasize about improper sexual acts or any other crime on the books. No overt act. No advances toward any other person. Just thoughts.

We have come a long way toward controlling crime and criminals. There are adequate laws on the books to prevent illegal conduct. But when we

invade the thought processes of individuals, we step over the line into a constitutionally impermissible area.

Justice Arguelles pointed out the adequacy of other laws in his concurring opinion in a decision invalidating this very statute in *People* v. *Soto, supra,* 171 Cal.App.3d at page 1170: "the deterrence of socially prohibited activities in public restrooms can be met by enforcement of existing sections 647, subdivision (a) (prohibiting commission or solicitation of a lewd act), section 314 (prohibiting indecent exposure), and similar statutes which prohibit specific conduct." It is regrettable that he now disavows his offspring. He was right the first time.

Justice Douglas, writing for a unanimous United States Supreme Court in *Papachristou* v. *City of Jacksonville, supra,* 405 U.S. at page 171 [31 L.Ed.2d at pages 120-121], emphasized the vice of vagrancy laws comparable to 647(d): "A presumption that people who might walk or loaf or loiter or stroll or frequent houses where liquor is sold, or who are supported by their wives or who look suspicious to the police are to become future criminals is too precarious for a rule of law. The implicit presumption in these generalized vagrancy standards—that crime is being nipped in the bud—is too extravagant to deserve extended treatment. Of course, vagrancy statutes are useful to the police. Of course, they are nets making easy the roundup of so-called undesirables. But the rule of law implies equality and justice in its application. Vagrancy laws of the Jacksonville type teach that the scales of justice are so tipped that even-handed administration of the law is not possible. The rule of law, evenly applied to minorities as well as majorities, to the poor as well as rich, is the great mucilage that holds society together."

Broussard, J., concurred.

The petition of real parties in interest Caswell et al., and petitioner Grassi for a rehearing was denied October 13, 1988. Mosk, J., was of the opinion that the petition should be granted.